# IN THE DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

PAUL KREPS, DIANA BOUDRIE,
ZACHARY BRAZIL, ROBIN SHIPE,
and I.F., individual Plaintiffs, and
International Union of United Automobile,
Aerospace, and Agricultural Implement
Workers of America ("UAW"),

       Plaintiffs,

v.

MICHIGAN UNEMPLOYMENT
INSURANCE AGENCY, JULIA
DALE, in her individual and official
capacity, KIMBERLY BERRY,
in her individual capacity, TERESA
BURNS, in her individual capacity,
and Does 1-3, unidentified state policy-
makers sued in their individual capacity.

       Defendants.

Case No. 2:22-cv-12020

Hon. MARK A. GOLDSMITH

CLASS ACTION

_____

DAVID M. BLANCHARD (P67190)
FRANCES J. HOLLANDER (P82180)
BLANCHARD & WALKER PLLC
Attorneys for Plaintiffs
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
hollander@bwlawonline.com

EDWARD MACEY (P72939)
International Union UAW
Attorney for Plaintiff UAW only
8000 E Jefferson Ave
Detroit, MI 48214-3963
(313) 926-5616
emacey@uaw.net

_____

## CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, EQUITABLE RELIEF, AND DAMAGES (FIRST AMENDED) AND JURY DEMAND

## <u>NATURE OF THE CASE</u>

1)      This is a civil action alleging the illegal conduct of Michigan's Unemployment Insurance Agency, its Director, and state policymakers (collectively, "Defendants") operating outside of authority granted by law. Defendants' policies and practices complained of herein violate minimum due process rights afforded by the United States Constitution and deprive Michigan's unemployed of benefits and other property without any basis in law.

2)      The Michigan Unemployment Insurance Agency ("UIA" or "Agency"), its Director, named in her individual and official capacity, and state policymakers, named in their individual capacity, are violating the due process rights of Michigan residents granted under the United States Constitution by:

a)  Adopting and maintaining intentional policies to block prompt payment of benefits for claimants who are eligible for ongoing benefits under all final Agency Determinations.

b)  Adopting and maintaining intentional policies to block prompt payment based on Agency Determinations that are not final, and before processing unemployment insurance ("UI") claimants' protests and appeals.

c)  Adopting and maintaining intentional policies of engaging in unauthorized collection activity based on Agency Determinations that

are not final, and before processing claimants' protests and appeals.

3)      Plaintiffs have a property right in unemployment benefits to be paid "when due." *California Dep't. of Labor v. Java*, 402 U.S. 121 (1971); <u>*Goldberg v. Kelly, 397 U.S. 254*</u> (1970) (recipients of unemployment compensation have constitutionally-protected property interests in unemployment benefits); *see also* <u>*Cahoo v. SAS Analytics Inc.,*</u> 912 F.3d 887, 903 (6th Cir. 2019) ("The Supreme Court long-ago proclaimed that '"The root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Loudermill*, 470 U.S. at 542 (emphasis in original) (quoting *Boddie*, 401 U.S. at 379). It has been nearly fifty years since the Supreme Court held that recipients have a protected property interest in unemployment compensation. *See Goldberg*, 397 U.S. at 262 (citing *Sherbert*, 374 U.S. 398 (1963).

4)      Defendants violated this well-established right by instituting a policy and practice of freezing benefits before any Determination denying or reversing UI claimants' eligibility has become final with notice and opportunity to be heard.

5)      Defendants' policies and procedures also violate the Settlement Agreement designed to remedy these very same illegal practices to which the Agency and its Director were parties in the related case of *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. filed April 21, 2015).

6)     The Agency and its Director have consented to this Court's jurisdiction to enforce the *Zynda* Settlement.

7)     During this time of unprecedented economic impact of the COVID-19 pandemic, employment security remains a constant threat and source of fear. Residents of the State of Michigan who were seeking work when the pandemic hit or who lost work as a result of the disease or the associated public health directives have been among those most impacted by the uncertainty of this trying time.

8)     As a result of the Agency's policies and practices that deny benefits, seize tax refunds, garnish wages, or withhold future benefits in violation of the law and without affording claimants due process, claimants who are unemployed through no fault of their own are left without a lifeline and are placed in financially dire situations. Thousands of UI claimants have waited a year or years to be paid. Many have never been paid at all. Others who are just now recovering from financial hardship are facing unlawful seizure of wages and tax returns without any legal basis.

9)     The individual Plaintiffs and putative class members are individuals who sought or received unemployment benefits and depended on benefits for economic survival.

10)     The Agency's policies and practices adversely affect Plaintiffs and others similarly situated by denying them due process and depriving them of benefits

when due and by failing to provide an avenue by which claimants can protest or appeal. Defendants must afford them an opportunity to be heard before cancelling benefits, garnishing taxes, seizing wages, or otherwise claiming a right to repayment without any legal basis to do so. Defendants may not arbitrarily withhold benefit payments when due or collect alleged "overpayments" before a Determination on eligibility has become final and before providing the claimant notice and opportunity to be heard.

11)   Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 based on the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1, and the prohibition on unlawful search and seizure U.S. Const. amend. IV, against the State of Michigan Unemployment Insurance Agency, its Director, Julia Dale, its Deputy Director, Kimberly Berry, and its Internal Controls Division Administrator, Teresa Burns.

### DESCRIPTION OF THE PLAINTIFF CLASSES

12)   The Individual Plaintiffs bring this action on behalf of themselves and on behalf of classes of similarly situated current and former UIA claimants who were deprived of procedural and substantive due process of law and denied benefits when due based on Agency policies and practices that lead to action unauthorized by law, including the following:

a)  Michigan residents and self-employed small business owners who

4

have never received benefits and never received a protestable Determination regarding eligibility, or who received a (Re)determination in their favor and still did not promptly receive benefits when due.

b) Michigan residents and self-employed small business owners who have had payments frozen even though there is no final Determination on their claim and who have not had notice and opportunity to be heard on a protest or appeal.

c) Michigan residents and self-employed small business owners who face assessment of overpayments and associated collection activity while protests and appeals are pending.

13)   The United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

14)   Federal law provides: "Every person who, under color of any status, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…." 42 U.S.C. § 1983.

15) The right to due process includes both procedural and substantive due process. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Procedural due process "requir[es] the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property.'" *Id.* Substantive due process is intended to "prevent governmental power from being 'used for purposes of oppression'" through "barring certain government actions regardless of the fairness of the procedures used to implement them." *Id.*

16) Individual Plaintiffs have a property right to receive UI benefits "when due." *California Dep't. of Labor v. Java*, 402 U.S. 121 (1971).

17) Individual Plaintiffs and the Classes seek declaratory and injunctive relief and money damages for Defendants' violations of the United States Constitution and of the Settlement Agreement in *Zynda*, as described below.

## JURISDICTION AND VENUE

18) Jurisdiction in this Court over Plaintiffs' claims is proper under 28 U.S.C. § 1331.

19) In the settlement of *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. filed April 21, 2015), the Agency consented to "continued

jurisdiction of this Court over interpretation of the terms, enforcement, and compliance with th[e] Settlement Agreement." This Court has jurisdiction over this claim because the Defendant Agency is not compliant with the *Zynda* Settlement, the state consented to continued jurisdiction of this Court for enforcement of the *Zynda* Settlement, and the State of Michigan has acknowledged this Court's jurisdiction over claims under the *Zynda* Settlement.

20)   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred therein.

## PARTIES

21)   Plaintiffs Paul Kreps, Diana Boudrie, Zachary Brazil, Robin Shipe, and I.F. (collectively, "Individual Plaintiffs") are Michigan residents who received or should have received unemployment insurance benefits through the Michigan Unemployment Insurance Agency and still have not received all benefits to which they are entitled, have had benefits prematurely cut off while protesting or appealing an adverse Determination, have not had benefits reinstated despite (Re)determinations in their favor, or have been assessed with unjustified "overpayments" and received bills from the state for collection of thousands of dollars.

22)   Plaintiff International Union of United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") is an international labor

organization headquartered in Detroit, Wayne County, Michigan. Many UAW members experience periodic layoffs and unemployment and file claims for UI benefits in Michigan. The UAW has historically litigated cases to promote the fair and impartial administration of UI laws in Michigan. The UAW seeks to protect the constitutional and statutory rights of its claimant members and to advance the rights it has secured for all UI claimants, including through the *Zynda* Settlement Agreement.

23) Defendant Michigan Unemployment Insurance Agency is the state body tasked with administering unemployment insurance benefits to Michigan workers. The Agency also directs the overpayment collection efforts for those to whom it has determined it has made overpayments. The Agency's principal place of business is located in Detroit, Michigan.

24) Defendant Julia Dale is the Director of the Michigan Unemployment Insurance Agency. Director Dale acts under color of state law and is sued in her individual and official capacity. Director Dale in her official and individual capacity is responsible to ensure that the Agency's procedures and automated systems comply with state and federal law, prior settlement agreements, and knew or should have known that the Agency's procedures and automated processes deprived claimants of property without due process.

25) Defendant Kimberly Berry is the Deputy Director of the Michigan

Unemployment Insurance Agency. Berry acts under color of state law and is sued in her individual capacity. Deputy Director Berry was the assigned liaison to ensure that Agency procedures comply with the prior settlement in *Zynda*. Deputy Director Berry knew or should have known that automated processes and procedures violated constitutional rights of UI claimants and the states prior settlement agreement.

26)     Defendant Teresa Burns is an Internal Controls Division Administrator of the Michigan Unemployment Insurance Agency. Burns acts under color of state law and is sued in her individual capacity. Burns was/is responsible to ensure that Agency Procedures and automated processes comply with state and federal law and with the Zynda Settlement Agreement. In her role, she was also on actual notice that the Agency's automated processes and procedures deprived UI claimants of property without constitutional due process.

### THE STATE AGENCY AND DIRECTOR AS DEFENDANTS HAVE CONSENTED TO FEDERAL COURT JURISDICTION

27)     The UIA and its Director, acting in her official capacity, consented to federal court jurisdiction in the Eastern District of Michigan for enforcement of *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. Filed April 21, 2015) (Settlement Agreement and Dismissal Order attached as Exhibit A hereto).

28)     The Parties agreed to continued federal court jurisdiction, and the Court ordered: "The Court shall retain jurisdiction of this matter pursuant to the terms of

the Settlement Agreement and for the purpose of enforcing the terms of this Order

and the Settlement Agreement." *Id.*

## INDIVIDUAL DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY WILLFULLY VIOLATE CLEARLY ESTABLISHED LAW

29)    Defendants Dale, Berry, and Burns are sued in their individual capacity

as persons acting under color of state law.  Defendants Dale, Burns and Berry, along

with unknown "Doe" Defendants, are not entitled to qualified immunity because

they are alleged to have promulgated and/or continued policies that violate clearly

established law by depriving UI claimants of due process rights.  In particular,

Defendants in their individual capacities were on actual notice that the challenged

Agency practices violate UI claimants' clearly established constitutional rights.

30)    Defendants Dale, Burns, and Berry, along with unknown "Doe

Defendants," were aware that the policies and automated procedures they

promulgated and/or continued violated clearly established law by depriving UI

claimants of due process because:

   a)  It is a matter of Supreme Court precedent. *California Dep't. of Labor

       v. Java*, 402 U.S. 121 (1971); *see also Zynda et al. v. Arwood et al.*,

       Case No. 2:15-cv-11449 (E.D. Mich. Filed April 21, 2015) (Settlement

       Agreement and Dismissal Order attached as Exhibit A hereto).

   b)  The prohibition on initiating collection or halting timely payment

       before a Determination is final is clearly repeated throughout federal

and state law and affirmed in the predecessor *Zynda* case. I Agency is

prohibited from halting payments when due before a Determination has

become final and the claimant has had notice and opportunity to be

heard. Pursuant to Paragraph 14 of the *Zynda* Settlement:

> *During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination.*

c) Under state law, the Agency is only allowed to seek collection on

alleged overpayment after all appeals have been exhausted. MCL

421.32a, 421.62(a).

d) Under federal law, the state of Michigan is prohibited from collecting

overpayments without notice or when it has failed to provide an

opportunity to be heard and an opportunity to consider any evidence.

26 U.S.C. § 6402(f)(3). *Inter alia*, the state is prohibited from collection

activity unless and until it "considers any evidence presented by such

person and determines that an amount of such debt is legally

enforceable and is a covered unemployment compensation debt." 26

U.S.C. § 6402(f)(3)(C).

e) Federal law only allows states to recover overpayments from claimants

by deducting them from future unemployment benefits if "[a]ny such deduction [is] made only in accordance with the same procedures relating to notice and opportunity for a hearing as apply to the recovery of overpayments of regular unemployment compensation paid by such State." 42 U.S.C. § 503(g)(1); *see also* 31 C.F.R. § 285.8(c)(1).

f) The state of Michigan has also agreed under contract with the Department of Labor regarding the CARES Act not to institute collection activity before a Determination has become final.

g) Department of Labor instructions in Unemployment Insurance Program Letters prohibit states from collecting an overpayment unless it has become final. *See* UIPL 23-80; UIPL 01-16; UIPL 20-21 Change 1.

h) Defendants' collection activity while a protest or appeal is pending also violates the *Zynda* Settlement Agreement. Specifically, this collection activity violates Paragraph 13 of the Agreement, which provides:

> *The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals.*

i) The Agency has already been sued on these practices and has previously agreed to refrain from such practices.

31) Defendants sued in their individual capacity implicitly authorized,

approved, or knowingly acquiesced in the policies and procedures at issue.

32) As policy-makers responsible for internal controls to ensure compliance, they knew or should have known of these violations since the inception and have failed to halt practices, or even to engage in discussion regarding the scope of the non-compliant practices.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

33) 28 U.S.C. § 2201 allows a court "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

34) FED. R. CIV. P. 57 provides for declaratory judgment under 28 U.S.C. § 2201 and provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

35) There exists an actual case and controversy between the Parties in that Plaintiffs allege that Defendants violated their legal rights and the rights of the Classes by failing to provide benefits when due, failing to process appeals and protests timely, freezing benefits during pending appeals and protests, failing to reinstate benefits, and collecting against them while protests and appeals are pending.

36)   Plaintiff UAW seeks declaratory and injunctive relief against the Agency and its Director in her official capacity under Count IV.  UAW requests that this Court halt Defendants' policies and procedures to the extent they violate the Settlement Agreement designed to remedy these very same illegal practices to which the Agency and its Director were parties in the related case of *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. filed April 21, 2015) (Settlement Agreement and Dismissal Order attached as Exhibit A hereto).

37)   The UAW has provided notice of the Agency's non-compliance and an opportunity to cure violations of the rights secured in the *Zynda* Settlement.

38)   Defendants have not provided any affirmation that they will comply with their statutory and constitutional obligation to pay benefits promptly, to process appeals and protests timely, to continue benefits during pending protests or appeals, to reinstate benefits, and to refrain from collection activity while protests and appeals are pending.

39)   FED. R. CIV. P. 65 allows courts to issue an injunction or restraining order.

40)   Plaintiffs are likely to prevail on the merits because Defendants have deprived Plaintiffs of unemployment benefits without providing mandatory procedural and substantive due process pursuant to the United States Constitution.

41)   Plaintiffs face a real and imminent danger of irreparable harm if an

injunction is not issued. Defendants' continued unlawful collection deprives Plaintiffs and the Classes of property without due process.

42)     Injunctive relief will not cause harm to Defendants or others. If this Court ultimately finds an injunction to be unnecessary, Defendants will be able to resume their collection activity.

43)     The broader public interest weighs in favor of injunctive relief because there is a clear public interest in the right to receive benefits when due and to be free from unlawful garnishment and seizure, especially given the lasting financial impact of the COVID-19 pandemic.

44)     As such, Plaintiffs are entitled to declaratory and injunctive relief.

## ALLEGATIONS REGARDING INDIVIDUAL PLAINTIFFS AND CLASS REPRESENTATIVES

### Plaintiff Paul Kreps

45)     Plaintiff Paul Kreps is a self-employed pest control technician.

46)     Kreps filed for unemployment benefits and was determined eligible for the PUA program.

47)     On August 5, 2020, the Agency issued a Monetary Determination finding Kreps entitled to a Weekly Benefit Amount ("WBA") of $362.00.

48)     Over two years later, he has never received any benefits payments. Without assistance for him and his family during the pandemic, Kreps has been

forced to seek short-term loans at exorbitant interest rates, and he lives under threat of eviction for himself and his family.

49)     Kreps has complied with Agency requests for identity verification and, after multiple submissions, the Agency finally determined Kreps was who he said he was in April 2021.   There is no adverse Determination he can appeal through the administrative process.  The Agency simply will not pay.

50)     Since April 2020, the Agency had listed his payments as "stop payment indicator."  There is no administrative process or remedy available to assert his right to timely unemployment assistance and to challenge the Agency's non-payment.

51)     On or about March of 2021, Kreps' claim was marked as "closed" on his online "MiWAM" portal despite never having received a penny in unemployment benefits.

52)     The Agency owes Kreps over $25,000.00 in pandemic relief benefits.

53)     If he ever receives the benefits owed, he will have already had to pay penalties, late fees, and loan interest to cover his indebtedness for basic living expenses that unemployment benefits should have covered, he will have lost tax advantages of timely payment, and he will have experienced significant lost time-value of the benefits owed to him.

**Plaintiff Diana Boudrie**

54)     Plaintiff Diana Boudrie was furloughed from her Michigan employer

due to the COVID-19 pandemic in April 2020. She worked for a company providing cooking demonstration and food samples in Costco stores. This business could not continue because of the pandemic.

55) Boudrie applied for unemployment benefits through the UIA and was approved for benefits.

56) Boudrie received benefits for the weeks of April 11, 2020 through August 22, 2020.

57) On November 6, 2020, Boudrie received a Notice of Determination reversing her eligibility for unemployment benefits, which has still not become final.

58) Agency notes in the file state "DO NOT SHARE DETERMINATIONS WITH THE CLMT. Per management interpretation of legal directives this claim has been denied for failure to affirm pandemic questions."

59) On November 13, 2020, Boudrie timely protested the Determination. Boudrie has not received a response to date to her protest. The Agency has not processed her protest and has not provided any Redetermination that would allow Boudrie to request a hearing by an administrative law judge.

60) Agency notes in the file confirm that "Claimant's timely protest was in filenet."

61) The Agency's reversal of a Determination is not final until the claimant has had an opportunity to be heard and has exhausted timely protest and appeals.

62)     On December 18, 2020, Boudrie received a notice of collection demanding repayment of benefits paid and threatening garnishment or other collection activity if she did not make immediate monthly (re)payments of $125 toward the benefits previously paid.

63)     Rather than timely responding to her protest, the Agency has regularly sent Boudrie bills and threatened additional collection activity.

64)     On March 24, 2021, Boudrie received a collection notice demanding immediate repayment of the entire balance of $9,440.00 and threatening garnishment, other collection activity, or even filing of a civil action if she did not repay the entire balance immediately.

65)     The Agency continues to take collection activity against Boudrie even though she has filed a timely protest and has not had an opportunity to exhaust her appeal rights.

66)     There is no state administrative remedy to stop collection activity or require her protest to be heard.

67)     Boudrie has suffered financial harm through the Agency's failure to pay her benefits owed and to adjudicate her claim timely.

68)     Boudrie reasonably fears that the Agency will garnish her wages and seize her tax refunds.

69)     Even if benefits are ultimately paid years late, Boudrie will have lost

the significant advantage and purpose of the pandemic relief, she will have already incurred debt or had to pay credit card interest, penalties, late fees, and loan interest to cover basic living expenses that unemployment benefits should have covered, she will have lost tax advantages of timely payment, and will have experienced significant lost time-value of the benefits owed to her.

**Plaintiff Zachary Brazil**

70)    On April 21, 2020, Plaintiff Zachary Brazil filed a claim for PUA benefits.

71)    On April 23, 2020, the Agency issued a Monetary Determination finding Brazil entitled to a WBA of $160.00.

72)    On or about May 16, 2020, the Agency placed a "stop payment indicator" on Brazil's account.

73)    On May 26, 2020, the Agency sent a request for information to Brazil to verify his identity. Brazil immediately reached out to the Agency and returned the request for information on June 4, 2020. Still, Brazil's benefit payments remained suspended.

74)    On February 1, 2021 and March 8, 2021, the Agency issued Monetary Redeterminations again finding Brazil eligible for $160.00 in weekly benefits.  Still, Brazil's benefit payments remained suspended.

75)    On or about November 13, 2021, Agency notes state that "SQR 36265

completed, indefinite stop period on generic availability issue is terminated as of 2/27/21."

76) Nonetheless, Brazil has been paid for only a few weeks since the May 2020 "stop payment indicator" was placed on his account. Most of the benefits owed remain frozen.

77) On September 13, 2021, for the first time, the Agency issued a Determination finding Brazil ineligible for benefits.

78) The Agency's September 2021 Determination has not become final because Brazil timely appealed the benefit denial. The Agency has not processed his appeal.

79) Brazil's benefits have been frozen while his appeal awaits adjudication.

80) Brazil has suffered financial harm through the Agency's failure to pay him benefits owed and to adjudicate his claim timely.

81) Brazil reasonably fears the Agency will garnish his wages and seize his tax refunds.

**Plaintiff Robin Shipe**

82) Plaintiff Robin Shipe is a small business owner of a printing and embroidery business who suffered a severe reduction in revenue and income due to the COVID-19 pandemic.

83) Shipe applied for pandemic relief benefits in October 2020, and

received a Monetary Determination that she was eligible for $160 per week weekly benefit amount

84) On December 15, 2020, the Agency issued another Determination finding Shipe eligible for benefits.

85) NonetheleIthe Agency froze Shipe's benefits, putting her file under a Benefit Payment Review ("BPR").

86) On January 8, 2021, Shipe received a new Monetary Determination finding her not eligible for benefits, which has not become final even though she timely protested.

87) The Agency never responded to her protest.

88) On or about June 15, 2021, Shipe received a Monetary Redetermination again purporting to find her not eligible for benefits, which has not become final.

89) Shipe timely appealed on July 13, 2021. Nonetheless, Shipe's appeal was logged in the Agency's system as late.

90) The Agency never provided Shipe a hearing on her appeal.

91) Rather, eleven months later, the Agency deleted Shipe's appeal and issued another Monetary Redetermination on May 24, 2022, again finding her ineligible for benefits.

92) On June 23, 2022, Shipe again timely appealed. Even though it was sent and received timely, Shipe's new appeal was also logged as untimely by the Agency.

93)     In messages to the Agency, Shipe stated her "total confusion" because an Agency representative had "assured [her] she had everything needed to complete [Shipe's] claim and would be no problem." Shipe asked, "When is somebody going to do my protest I filed. No one answers any of my correspondence why?" and "Why am I getting no response to several of my correspondence to you and my protest not being addressed?" Shipe reached out to the Agency, stating "I need a supervisor to call me about this as both these [Agency representatives] assured me they were all set and didn't need anything else."

94)     To date, Shipe has never received pandemic relief benefits.

95)     Shipe has no administrative remedies available that would cure the Agency practice of suspending benefits for the last two years.

96)     Shipe has suffered financial harm through the Agency's failure to pay her benefits owed and to adjudicate her claim timely.

## Plaintiff I.F.

97)     Plaintiff I.F. is a high school student who worked part-time at an activity center when the COVID-19 pandemic hit. Her workplace was closed due to the pandemic.

98)     On April 23, 2020, the Agency found I.F. entitled to a WBA of $160.00.

99)     In January 2021, the Agency placed I.F.'s account under a Benefit Payment Review and stopped paying benefits when due.

100)  On February 1, 2021, the Agency issued a Monetary Redetermination to I.F. again finding her eligible for a $160.00 WBA.

101)  The Agency issued additional Monetary Redeterminations on March 8, 2021 and March 22, 2021, again finding I.F. eligible for benefits.

102)  In April 2021, the Agency issued an "availability" Determination finding I.F. retroactively ineligible for benefits from September 6, 2020 until June 2021.

103)  I.F. timely protested and appealed. I.F.'s benefits remained frozen while her protests were pending.

104)  The Determination on I.F.'s eligibility did not become final until July 29, 2022, when the Unemployment Insurance Appeals Commission found her eligible for benefits. As of November, 2022, she has still not been paid suspended payments, even though all final Determinations affirm her eligibility.

105)  I.F. has suffered financial harm through the Agency's failure to pay her benefits when due and to adjudicate her claim timely.

## GENERAL ALLEGATIONS

### A.    Defendants Operate Michigan's Unemployment Insurance Agency

106)  The Defendant Agency possesses executive authority to operate pursuant to state law, known as the Michigan Employment Security Act ("MESA" or the "Act"), MCL 421.1 *et seq.*, and various executive orders and state regulations.

107)   The Defendant Agency operates Michigan's unemployment insurance program.

108)   The individual Defendants Dale, Berry, and Burns are responsible for overseeing the Defendant Agency and setting its policies and procedures and ensuring that they comply with state and federal law.

109)   The Agency's authority and jurisdiction is defined and limited by the MESA.

110)   The Agency is required to comply with federal law under the Social Security Act and all amendments and instructions from the U.S. Department of Labor.

111)   The Agency is required to administer CARES Act pursuant to contract with the United States Department of Labor.

**B.     The Federal Government Provides Grants to States Subject to a Mandate that States Provide Due Process to Unemployment Claimants**

112)   To support state unemployment insurance programs, the United States government, through the Department of Labor, provides monetary grants. The State of Michigan receives such monetary grants.

113)   To be eligible for such grants, states must comply with federal law establishing minimum due process requirements. *See* 42 U.S.C. §§ 501-503. Specifically, every Determination affecting claimants' rights to benefits must be in

a written Determination and the state must provide for notice and opportunity to be heard before halting benefits. *California Dep't. of Labor v. Java*, 402 U.S. 121 (1971).

114)   Pursuant to state and federal law, the Agency collects state payroll taxes and reimbursements from covered employers to pay benefits to eligible claimants. The payroll taxes and reimbursements collected by the Agency are deposited into a trust fund. During the pandemic, additional federal programs provided direct funding for financial relief to those not eligible for traditional UI benefits, and they also provided extended and supplemental financial relief.

115)   Any benefits determined by the Agency to have been improperly paid to claimants and subsequently collected by the Agency must be deposited in the trust fund or returned to the federal treasury (if provided under the pandemic relief programs).

116)   Pursuant to state and federal law, the sole use of benefit overpayments collected from claimants and payroll tax revenues deposited in the trust fund is for the payment of benefits.

117)   Federal law allows states to recover alleged past overpayment from claimants by deducting them from current unemployment benefits, but only if "[a]ny such deduction [is] made only in accordance with the same procedures relating to notice and opportunity for a hearing as apply to the recovery of overpayments of

regular unemployment compensation paid by such State." 42 U.S.C. § 503(g)(1).

118)   Similarly, federal law allows states to recover overpayments through intercepting federal income tax refunds, subject to the same minimum due process requirements.

119)   The United States Constitution and federal law require states to apply minimum due process to all claimants, regardless of whether they are ultimately found to be eligible or ineligible for benefits and regardless of whether they are ultimately determined to have obtained benefits through misrepresentation or other improper means.

### C.   Defendants have a Contractual Obligation to Pay Benefits Timely and When Due and to Collect only Within the Parameters of the *Zynda* Settlement

120)   The Settlement Agreement in *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. filed April 21, 2015) also provides parameters within which Defendants may halt timely payments or initiate collection of overpaid benefits.

121)   On January 31, 2017, Defendant Unemployment Insurance Agency and its Officers entered into a contract—the Settlement Agreement attached as Exhibit A—to settle the *Zynda* lawsuit.

122)   On February 2, 2017, this Court entered a Stipulated Order of Dismissal, dismissing the *Zynda* lawsuit and retaining jurisdiction for the purpose of

enforcing the terms of the Court's Order and the *Zynda* Settlement Agreement.

123)   Settlement Agreement Paragraph 13 provides that "[t]he Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals."

124)   Settlement Agreement Paragraph 14 provides "[d]uring the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC [unemployment compensation] payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination."

125)   On September 2, 2021, Plaintiffs' Counsel provided notice to the State via First Class Mail and E-Mail, putting it on notice of violations of the *Zynda* Settlement. Defendants refused to confer further or to cure the violations.

**D.     The Federal Government Provided Additional Funds to States**

126)   On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act went into effect.

127)   The CARES Act provides, among other provisions, a $150 billion "Coronavirus Relief Fund" for state, local, and tribal governments to cover any costs

related to COVID-19 incurred between March 1 and December 30, 2020 for which the governments did not previously budget. 42 U.S.C. § 801.

### E.   The CARES Act Expanded Unemployment Benefits

128)   The CARES Act expanded unemployment benefits through Pandemic Emergency Unemployment Compensation ("PEUC") and Pandemic Unemployment Assistance ("PUA").

129)   PEUC provides an additional $600 weekly in benefits for those who file for and receive unemployment benefits of at least $1 as a weekly benefit for the weeks between March 29 and July 31, 2020. 15 U.S.C. § 9023.

130)   PEUC also extended the benefits period for unemployment insurance by thirteen (13) weeks for those who had exhausted their regular benefits.

131)   PUA provides additional benefits weeks to individuals not typically eligible for regular unemployment, beginning retroactively on January 27, 2020.

132)   Under an agreement with the Department of Labor, the Agency was permitted to provide PUA to individuals not eligible for regular unemployment, such as those who are self-employed, those seeking only part-time employment, or those who otherwise would not qualify for regular unemployment compensation.

133)   Regardless of the program, the Michigan Unemployment Insurance Agency is required to follow state law regarding eligibility Determinations and overpayment collections activity and to adhere to federal law and U.S. Department

of Labor guidelines requiring notice and opportunity to be heard, protection from governmental abuse of power, and other due process protections.

**F. Defendants' Policies and Practices of Freezing Benefits and Seeking Collections Fail to Comport with Minimum Due Process Requirements**

134) The Agency violates due process when it stops payment on benefits without providing an appeal or protest mechanism, fails to provide a prompt hearing on the merits, freezes benefits or undertakes collection activity during a pending protest or appeal, and/or fails to pay benefits when due.

135) The United States Supreme Court has established that the termination of a person's welfare benefits demands procedural due process protections and has found that welfare benefits are a property interest because they are a statutorily-created entitlement. *Goldberg v. Kelly*, 397 U.S. 254, 261-62 & n 8 (1970).

136) UI claimants are also entitled to substantive due process protections.

137) The United States Supreme Court has also held that states must pay unemployment benefit payments promptly, pursuant to 42 U.S.C. § 503 (Section 303 of the Social Security Act). *See California Dept. of Human Res. Dev. v. Java*, 402 U.S. 121, 130 (1971) (concluding "that the word 'due' in § 303(a)(1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions.").

138) The United States Supreme Court in *Java* also held that states must

provide for notice and opportunity to be heard before halting benefits. 402 U.S. at 133-34.

139)  Plaintiffs and other Class members have property interests created by state and federal law in any benefits paid to them by the Agency, in their wages, and in their state and federal tax refunds. These interests are protected by Amendment 14 Section 1 of the United States Constitution.

140)  Defendants' substantive and procedural due process obligations to Plaintiffs and the Classes include an obligation to follow the minimum due process requirements with respect to the payment of benefits and the collection of unemployment debts, including overpayments and penalties.

141)  Defendants have adopted policies and practices that deny benefits to claimants who are eligible.

142)  Benefits to which Plaintiffs and other Class members are entitled have been frozen, withheld, or recalled arbitrarily and without notice or without a hearing in violation of the due process clause of Amendment 14 Section 1 of the United States Constitution.

143)  Benefits to which Plaintiffs and other Class members are entitled have not been reinstated despite a Determination in claimants' favor, in violation of the due process clause of Amendment 14 Section 1 of the United States Constitution.

144)  Defendants engage in collection activity against Plaintiffs and other

Class members while protests and appeals are pending.

145) Defendants engage in collection activity against Plaintiffs and other Class members despite Determinations in claimants' favor.

146) Defendants are not entitled to governmental immunity because their unlawful activities, as described herein, constitute conduct that violates clearly established law and is therefore not a *bona fide* governmental function. *See Smith v. State*, 428 Mich. 540, 610 (1987); *California Dep't. of Labor v. Java*, 402 U.S. 121 (1971).

147) As a result of the violations of the United States Constitution alleged above, Plaintiffs and the Classes suffered one or more of the following: inability to pay rent or mortgage, food insecurity, inability to pay for transportation, late payment fees and utility shut-off fees, extended borrowing on retirement accounts, or excessive interest rates on "payday loans" or other short term high-interest bridge loans essential to meet immediate needs during the pandemic.

148) The deprivation of property related to unemployment benefits has a disparate impact on communities of color, mothers and caregivers, and other disadvantaged populations.

149) Post-deprivation remedies are insufficient to protect Plaintiffs' and the Class members' rights to due process because even a temporary deprivation of wages, unemployment benefits, or tax refunds creates a substantial burden on UI

claimants who rely on such income to survive.

## CLASS ACTION ALLEGATIONS

### The Prompt Payment Class

150)   Individual Plaintiffs brings this matter as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons ("the Prompt Payment Class"):

> Claimants who have not been paid benefits when due and for whom all final Agency (Re)determination(s) are in their favor but have not been paid for six months or more.

151)   The Agency has failed to pay unemployment benefits when and as due to Individual Plaintiffs and putative Class members.

152)   For thousands of Michigan's unemployment residents, the Agency has stopped payment despite their eligibility. Claims have been labelled as "stopped payment," subject to "benefit payment review" ("BPR"), or "additional claim required." Despite these labels, no Determination is issued, and claimants have no ability to protest or appeal the Agency's failure to pay benefits owed.

153)   Some of those against whom the Agency has stopped payment have been unemployed since the start of the pandemic in March 2020 and have never received unemployment benefits. Others were eligible and received benefits until facing a "stop payment" indicator or otherwise facing frozen benefits, and they were denied future benefits despite completing identity verification requirements.

154)   Defendants have adopted policies and practices that fail to provide prompt and timely payment of benefit when due, even though all necessary and relevant information has been provided.

155)   Beginning in or around October 2020 or earlier, the Agency instituted a policy regarding BPR, which caused payments due to UI recipients to be halted without issuing any Determination explaining why the benefit was halted. Because there was no appealable Determination, the Agency provided no recourse for claimants to challenge the decision to halt timely payment of benefits.

156)   The policy and practice the Agency adopted is often (but not always) reflected by a "Stop Payment Indicator" ("SPI") placed on benefit weeks within the Agency's internal computer system (a/k/a "MiDAS"). Claimants were not given notification of the Determination to stop payment and were not provided any recourse to challenge the Agency Determination that benefit payments should be halted.

157)   The Agency applied a blanket policy of arbitrarily freezing benefit payments for every claimant that was owed more than three weeks of back benefits, without any specific justification or suspicion. Agency call center agents were told to repeat a script that callers should continue to watch their MiWAM account and look for changes to be resolved in the next 7-14 days. Rarely, if ever, were SPIs lifted in 7-14 days. For many putative Prompt Payment Class Members, they waited

one year or more to receive the benefits due. Some have never received benefits due to this day.

158)   The Agency authorized and encouraged call center workers to put a BPR or SPI on accounts without providing them with adequate guidance or training. The BPR policy allowed call representatives, many of them untrained temporary workers, to halt payments based on arbitrary and capricious assumptions.

159)   In addition to automatically halting payments for everyone owed more than three weeks of benefits, the Agency's customer service agents were allowed to halt payments arbitrarily if they observed anything "suspicious" in the file or any "reasonable suspicion" arising from a call from a claimant. The Agency did not define these terms or provide recourse for claimants to protest or appeal BPRs based on such "suspicion." Aspects of "reasonable suspicion" SPI program were automated and coded into the MiWAM/MIDAS computer platform.

160)   Even when claimants received favorable (Re)determinations finding them eligible for benefits, Defendants did not promptly pay or reinstate benefits for many putative Prompt Payment Class members.

161)   As a direct and proximate cause of the policies and practices adopted by Defendants, Plaintiffs and those similarly situated have been subjected to wrongful denials of unemployment benefits.

162)   If certified for class-wide treatment, this class is brought on behalf of

all similarly situated persons who do not opt-out of the Prompt Payment Class.

163)   Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to FED. R. CIV. P. 23.

164)   The Prompt Payment Class satisfies the numerosity standard as it consists of thousands or more persons who are geographically dispersed and, therefore, joinder of all Prompt Payment Class members in a single action is impracticable.

165)   Questions of fact and law common to the Prompt Payment Class predominate over any questions affecting only individual members. The questions of law and fact common to the Prompt Payment Class arising from Defendants' policies and procedures include, without limitation:

    a)  Whether they applied for and received state or federal unemployment benefits through the Defendant Agency; and

    b)  Whether the Agency has failed to pay benefits for valid claims when and as due.

166)   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claim.

167)  Plaintiffs' claims are typical of those of the Prompt Payment Class in that:

    a)  They applied for and/or received state or federal unemployment benefits through the Defendant Agency;

    b)  The Agency or a higher appeals authority found them eligible for benefits on any and all final Determinations; and

    c)  The Agency willfully failed to pay them benefits when and as due.

168)  Individual Plaintiffs are adequate representatives of the Prompt Payment Class because they are members of the Class they seek to represent, and their interests do not conflict with the interests of the members of the Prompt Payment Class. The interests of the members of the Prompt Payment Class will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

169)  Maintenance as a class action of the claim asserted is superior to other available methods for fairly and efficiently adjudicating the controversy, as members of the Prompt Payment Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court, and there are no material difficulties impairing the management of a class action.

170)   It would be impracticable and undesirable for each member of the Prompt Payment Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Prompt Payment Class members.

171)   Prompt Payment Class members do not have any administrative remedy to cure the cost of not receiving benefits when due. For instance, every claimant entitled to benefits when due in 2020 and who did not receive benefits in 2020 lost the tax benefit associated with UI payments in 2020. That benefit alone cost each class member thousands of dollars.

## The Prompt Appeal Class

172)   Individual Plaintiffs bring this matter as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons ("the Prompt Appeal Class"):

> Claimants who have had prompt payment of benefits frozen or subjected to collections of previously paid benefits arbitrarily, before Agency Determinations have become final, or before notice and opportunity for a hearing.

173)   Until protests and appeals are exhausted, an Agency eligibility Determination is not final. For Individual Plaintiffs and other Prompt Appeal Class members, the Agency has failed to consider protests and appeals in a timely fashion

even while it freezes benefits and undertakes to collect and garnish alleged overpayments.

174) Defendants have adopted policies and practices that freeze benefits arbitrarily while Individual Plaintiffs have pending protests or appeals.

175) Defendants have carried out a policy and practice of suspending payment of benefits due upon Agency reversal of an eligibility Determination before claimants receive notice and an opportunity to challenge that adverse Determination or Redetermination and before it has become final.

176) Defendants have adopted policies and practices that seek restitution in the form of collection activity from those who the Agency lawfully paid unemployment benefits.

177) Defendants instituted this policy and practice willfully and with knowledge that arbitrarily halting benefits before notice and opportunity to be heard violates the due process rights of claimants under *Java* and violates the Agency's obligations under the *Zynda* Settlement Agreement previously before this Court.

178) The Agency maintains a policy and practice of beginning collection activity once a claimant is found to have been ineligible for benefits previously received, even if the claimant has protested or appealed that Determination. And for claimants who protested late with good cause, the Agency has initiated and pursued collection activity while failing or refusing to consider those applications.

179) Defendants' collections activity often results in garnishment of wages or seizure of tax returns.

180) Defendants started collection activity against Plaintiffs and others before (Re)determinations of restitution had been issued.

181) Defendants repeatedly issue restitution Determinations or statements, even while claimants have a protest or appeal pending.

182) If a claimant is able to make contact with an agent, throughout 2021 and thereafter, they were told that there is nothing more the claimant can do and that the file is "awaiting management review" or that their protest is in process. This has gone on for months or years for Individual Plaintiffs and putative class members.

183) Because Defendants do not provide claimants with the ability to request that they fulfill their obligation to continue benefits while there is a pending protest or appeal, there is no administrative process available to remedy the violation.

184) As a direct and proximate cause of the policies and practices adopted by Defendants, Individual Plaintiffs and those similarly situated have been subjected to premature collection activity and unconstitutional seizure of property without due process.

185) If certified for class-wide treatment, this class is brought on behalf of all similarly situated persons who do not opt-out of the Prompt Appeal Class.

186) Individual Plaintiffs' claims satisfy the numerosity, commonality,

typicality, adequacy, predominance, and superiority requirements of a class action pursuant to FED. R. CIV. P. 23.

187)   The Prompt Appeal Class satisfies the numerosity standard as it consists of thousands of persons who are geographically dispersed and, therefore, joinder of all Prompt Appeal Class members in a single action is impracticable.

188)   Questions of fact and law common to the Prompt Appeal Class predominate over any questions affecting only individual members. The questions of law and fact common to the Prompt Appeal Class arising from Defendants' policies and practices include, without limitation:

    a)  Whether they applied for and received state or federal unemployment benefits through the Defendant Agency;

    b)  Whether the Agency found them ineligible for benefits after an initial Determination of eligibility;

    c)  Whether they protested or appealed any adverse Determination; and

    d)  Whether the Agency froze benefits and/or sought collections before it timely processed the protest or appeal, and before it became final and collectible.

189)   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations

of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claim.

190)   Individual Plaintiffs' claims are typical of those of the Prompt Appeal Class in that:

    a)   They applied for and/or received state or federal unemployment benefits through the Defendant Agency;

    b)   The Agency found them ineligible for benefits after an initial Determination of eligibility;

    c)   They protested or appealed the adverse Determination; and

    d)   The Agency froze benefits or sought collections before it timely processed the protest or appeal, and before it became final and collectible.

191)   Individual Plaintiffs are adequate representatives of the Prompt Appeal Class because they are members of the Class they seek to represent, and their interests do not conflict with the interests of the other members of the Prompt Appeal Class. The interests of the members of the Prompt Appeal Class will be fairly and adequately protected by Individual Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

192)   Maintenance as a class action of the claim asserted is superior to other

available methods for fairly and efficiently adjudicating the controversy, as members of the Prompt Appeal Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court, and there are no material difficulties impairing the management of a class action.

193) It would be impracticable and undesirable for each member of the Prompt Appeal Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Prompt Appeal Class members.

194) Prompt Appeal Class members do not have any administrative remedy available to receive prompt payment of the benefits they are eligible for or to stop collections on benefits previously received.

### The Early Collections Class

195) Individual Plaintiffs bring this matter as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons ("the Early Collections Class"):

> All claimants who have been subject to Agency collection and activity before there is a final Determination on the merits and a final Determination on overpayment.

196)   If certified for class-wide treatment, this class is brought on behalf of all similarly situated persons who do not opt-out of the Early Collection Class.

197)   The Early Collection Class overlaps in part with the Prompt Appeal Class.

198)   Defendants have carried out a policy and practice of initiating collection of restitution (a/k/a "overpayment collection") before a Determination on eligibility *and* a Determination on restitution have become final.

199)   Defendants have done so willingly and despite notice that early collection activity:

   a)  Is not lawful under the MESA;

   b)  Is not lawful under the State's contract to administer CARES Act benefits;

   c)  Is not lawful under a prior Settlement Agreement before this Court in *Zynda*; and

   d)  Is not lawful under Department of Labor instructions for compliance with the program.

200)   Because Defendants do not provide claimants with the ability to request that Defendants stop collections while there is a pending protest or appeal, there is no administrative process available to remedy the violation.

201)   The class satisfies the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirements of a class action pursuant to FED. R. CIV. P. 23.

202) The Early Collection Class satisfies the numerosity standard as it consists of hundreds if not thousands of persons who are geographically dispersed and, therefore, joinder of all Early Collection Class members in a single action is impracticable.

203) Questions of fact and law common to the Early Collection Class predominate over any questions affecting only individual members. The questions of law and fact common to the Early Collection Class arising from Defendants' policies and procedures include, without limitation:

    a) Whether they applied for and received UI and/or PUA benefits through the Defendant Agency;

    b) Whether the Agency later determined that they were ineligible for UI and/or PUA benefits already received;

    c) Whether the Agency engaged in collection activity based on a Determination that was not yet final; and

    d) Whether the Agency engaged in collection activity before a final Determination on the merits.

204) The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations

of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claim.

205)  Individual Plaintiffs' claims are typical of those of the Early Collection Class in that:

a)  They applied for and received UI and/or PUA benefits through the Defendant Agency;

b)  After finding them eligible and paying benefits, the Agency later alleged that they were ineligible for UI and/or PUA benefits;

c)  The Agency engaged in collection activity even though they had a protest or appeal pending.

206)  Individual Plaintiffs are adequate representatives of the Early Collection Class because they are members of the Class they seek to represent, and their interests do not conflict with the interests of the members of the Early Collection Class. The interests of the members of the Early Collection Class will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

207)  Maintenance as a class action of the claim asserted is superior to other available methods for fairly and efficiently adjudicating the controversy, as members of the Early Collection Class have little interest in individually controlling the

prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court, and there are no material difficulties impairing the management of a class action.

208)   It would be impracticable and undesirable for each member of the Early Collection Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Early Collection Class members.

## COUNT I
### VIOLATION OF THE UNITED STATES CONSTITUTION, AMEND XIV § 1
### BROUGHT UNDER 42 U.S.C. § 1983
### (ON BEHALF OF INDIVIDUAL PLAINTIFFS AND THE PROMPT PAYMENT CLASS)

209)   Plaintiffs hereby incorporate by reference and reasserts the allegations set forth above.

210)   The United States Constitution provides in relevant part, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person or life, liberty, or property, without due process of law…." U.S. Const. amend. XIV, § 1.

211)   Due process requires that unemployment benefits claimants be afforded a meaningful opportunity to be heard before being deprived of life, liberty, or property. 42 U.S.C. § 1983.

212) Benefits to which Plaintiffs and other Prompt Payment Class members are entitled have been frozen without notice or a hearing in violation of the due process clause of the United States Constitution.

213) Plaintiffs and other Prompt Payment Class members have property interests created by state and federal law in any benefits paid to them by the Agency.

214) Plaintiffs and other Prompt Determination Class members have property interests created by state and federal law in benefits they are due.

215) Defendants' due process obligations to Plaintiffs and the Prompt Payment Class include an obligation to follow the minimum due process requirements with respect to the payment of benefits owed when and as due, including notice and opportunity to be heard before denying benefits and protection from arbitrary governmental action.

216) Defendants have stopped, withheld, or recalled benefits owed to Plaintiffs and the Prompt Payment Class members, yet Defendants provide no way to protest or appeal this denial of benefits. Any and all final Determinations on eligibility for benefits have been in their favor, yet the Agency's "stop payment" policies have deprived them of payment when due.

217) Defendants therefore denied Plaintiffs and the Prompt Payment Class members their property rights to state and federal unemployment benefits contrary to the United States Constitution's guarantee to due process. U.S. Const. amend.

XIV, § 1.

218)   Post-deprivation remedies are insufficient to protect Plaintiffs' and the Prompt Payment Class members' rights to due process because even a temporary deprivation of wages, unemployment benefits, or tax refunds creates a substantial burden on claimants who rely upon such income to survive.

219)   Even if benefits are ultimately paid, the waiting period in which benefits are suspended, withheld, or recalled causes financial harm to Plaintiffs and the Prompt Payment Class members.

220)   The individual Defendants Dale, Berry, and Burns are liable in their individual capacity for this violation. Defendant Dale is liable in her official capacity These individuals acted under color of state law to deprive Plaintiffs and the Prompt Payment Class members of constitutional rights and may be held individually liable under 42 U.S.C. § 1983. Defendant Dale continued and acquiesced in this policy since becoming Director of the Agency. At all relevant times, Defendants Berry and Burns were the architects who designed and implemented these violations.

221)   Defendants' policies and procedures violate the substantive and procedural due process rights of Plaintiffs and Prompt Payment Class members.

222)   Plaintiffs, on behalf of themselves and the Prompt Payment Class, seek damages, injunctive relief prohibiting further violations, declaratory judgment, and compensatory and punitive damages.

## COUNT II

### VIOLATION OF THE UNITED STATES CONSTITUTION, AMEND XIV § 1
### BROUGHT UNDER 42 U.S.C. § 1983 AND *ZYNDA*
### (ON BEHALF OF INDIVIDUAL PLAINTIFFS AND THE PROMPT APPEAL CLASS)

223) Plaintiffs hereby incorporate by reference and reasserts the allegations set forth above.

224) The United States Constitution provides in relevant part, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person or life, liberty, or property, without due process of law…." U.S. Const. amend. XIV, § 1

225) Due process requires that unemployment benefits claimants be afforded a meaningful opportunity to be heard before being deprived of life, liberty, or property. 42 U.S.C. § 1983.

226) Defendants have issued (Re)Determinations finding Plaintiffs and Prompt Appeal Class Members ineligible for benefits. Despite protests and appeals from Plaintiffs and Class members, Defendants have not adjudicated these protests or appeals in a timely manner.

227) Defendants often seek to recoup overpayments from these Plaintiffs even though there is no final Determination on their eligibility.

228) Defendants' due process obligations to Plaintiffs and the Prompt Appeal Class members include an obligation to follow the minimum due process requirements with respect to the collection of unemployment debts, including notice

49

and opportunity to be heard before denying benefits and protection from arbitrary governmental action.

229)   Defendants therefore denied Plaintiffs and the Prompt Appeal Class members their property rights to state and federal unemployment benefits contrary to the United States Constitution's guarantee to due process. U.S. Const. amend. XIV, § 1.

230)   Post-deprivation remedies are insufficient to protect Plaintiffs' and the Prompt Appeal Class members' rights to due process because even a temporary deprivation of unemployment benefits creates a substantial burden on claimants who rely upon such income to survive.

231)   Even if benefits are ultimately paid, the waiting period in which benefits are suspended, withheld, or recalled causes financial harm to Plaintiffs and the Prompt Appeal Class members.

232)   The Defendant Agency and its Director are liable for this violation. The Agency consented to the jurisdiction of this Court for this violation under *Zynda*.

233)   The individual Defendants Dale, Berry, and Burns are liable in their individual capacity for this violation. These individuals acted under color of state law to deprive Plaintiffs and the Prompt Appeal Class members of constitutional rights and may be held individually liable under 42 U.S.C. § 1983. Defendant Dale continued and acquiesced in this policy since becoming Director of the Agency. At

all relevant times, Defendants Berry and Burns were the architects who designed and implemented these violations.

234)   Defendants' policies and procedures violate the substantive and procedural due process rights of Plaintiffs and Prompt Appeal Class members.

235)   Plaintiffs, on behalf of themselves and the Prompt Appeal Class, seek damages, preliminary and permanent injunctive relief prohibiting further violations, declaratory judgment, and punitive damages.

## COUNT III
### VIOLATION OF THE UNITED STATES CONSTITUTION, AMEND XIV § 1
### BROUGHT UNDER 42 U.S.C. § 1983 AND *ZYNDA*
### (ON BEHALF OF INDIVIDUAL PLAINTIFFS AND THE EARLY COLLECTIONS CLASS)

236)   Plaintiffs hereby incorporate by reference and reasserts the allegations set forth above.

237)   The United States Constitution provides in relevant part,

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person or life, liberty, or property, without due process of law…."

U.S. Const. amend. XIV, § 1; and

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

238)   The Fourth Amendment prohibits government seizure or seeks to forfeit citizen property in satisfaction of a fine or debt owed to the government. *See e.g. U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 49, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993); *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 352 n.18, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977), *Zynda v. Arwood*, 175 F. Supp. 3d 791, 811-12 (E.D. Mich. 2016).

239)   Due process requires that unemployment benefits claimants have security in their property and a right to be free from arbitrary governmental seizure and be afforded a meaningful opportunity to be heard before being deprived of life, liberty, or property. 42 U.S.C. § 1983.

240)   Benefits to which Plaintiffs and other Early Collections Class members are entitled have been suspended or recalled in violation of the substantive and procedural due process clause of the United States Constitution.

241)   Plaintiffs and other Early Collections Class members have property interests created by state and federal law in any benefits paid to them by the Agency.

242)   Plaintiffs and the Early Collections Class members have property interests in their wages, benefits, and tax returns and to be free from collections without due process.

243)   Defendants' collection activity before an eligibility Determination has become final and while a protest or appeal is pending violates state and federal law.

244)  Under state law, the Agency is only allowed to seek collection on alleged overpayment after all appeals have been exhausted. MESA Sec. 32a, 62(a).

245)  Under federal law, the state of Michigan is prohibited from collecting overpayments without notice or when it has failed to provide an opportunity to be heard and an opportunity to consider any evidence. 26 U.S.C. § 6402(f)(3).

246)  *Inter alia*, the state is prohibited from collection activity unless and until it "considers any evidence presented by such person and determines that an amount of such debt is legally enforceable and is a covered unemployment compensation debt." 26 U.S.C. § 6402(f)(3)(C).

247)  Federal law only allows states to recover overpayments from claimants by deducting them from future unemployment benefits if "[a]ny such deduction [is] made only in accordance with the same procedures relating to notice and opportunity for a hearing as apply to the recovery of overpayments of regular unemployment compensation paid by such State." 42 U.S.C. § 503(g)(1); *see also* 31 C.F.R. § 285.8(c)(1).

248)  The state of Michigan has agreed under contract with the Department of Labor regarding the CARES Act not to institute collection activity before a Determination has become final.

249)  The Department of Labor instructions in Unemployment Insurance Program Letters prohibit states from collecting an overpayment unless it has become

final. *See* UIPL 23-80; UIPL 01-16; UIPL 20-21 Change 1.

250) Defendants' collection activity while a protest or appeal is pending also violates the *Zynda* Settlement Agreement. Specifically, this collection activity violates Paragraph 13 of the Agreement, which that "[t]he Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals."

251) Defendants' due process obligations to Plaintiffs and the Early Collections Class members include an obligation to follow the minimum due process requirements with respect to the collection of unemployment debts, including notice and opportunity to be heard before denying benefits and protection from arbitrary governmental action.

252) Defendants routinely engaged in collection activity against Plaintiffs and the Early Collections Class members while appeals on the merits or appeals on restitution Redeterminations were pending.

253) Defendants' practice of initiating and undertaking collection activity led to collection against Plaintiffs and the Early Collections Class for benefit overpayments that were not actually owed. Defendants decreased Plaintiffs' and the Early Collection Class members' current unemployment benefits, withheld state tax returns, and garnished wages.

254)   Defendants failed to fairly advise Plaintiffs and Early Collections Class Members of the rules regarding state and federal benefit overpayments and their collection and denied Plaintiffs and Early Collections Class members an opportunity to a hearing at the time of collection of an overpayment.

255)   Defendants therefore denied Plaintiffs and Early Collections Class Members their property rights to state and federal unemployment benefits contrary to the United States Constitution's guarantee to due process. U.S. Const. amend. XIV, § 1.

256)   Post-deprivation remedies are insufficient to protect Plaintiffs' and the Early Collections Class members' rights to due process because even a temporary deprivation of wages, unemployment benefits, or tax refunds creates a substantial burden on claimants who rely upon such income to survive.

257)   Even if benefits are ultimately paid, the waiting period in which benefits are suspended, withheld, or recalled causes financial harm to Plaintiff and the Early Collections Class members.

258)   The Defendant Agency and its Director are liable for this violation. The Agency consented to the jurisdiction of this Court for this violation under *Zynda*.

259)   The individual Defendants Dale, Berry, and Burns are liable in their individual capacity for this violation. Defendant Dale is liable in her official capacity. These individuals acted under color of state law to deprive Plaintiffs and

the Early Collections Class members of constitutional rights and may be held individually liable under 42 U.S.C. § 1983. Defendant Dale continued and acquiesced in this policy since becoming Director of the Agency. At all relevant times, Defendants Berry and Burns and unknown Does were the architects who designed and implemented these violations.

260)  Defendants' policies and procedures violate the substantive and procedural due process rights of Plaintiffs and Early Collections Class members.

261)  Plaintiffs, on behalf of themselves and the Early Collections Class, seek damages, injunctive relief prohibiting further violations, declaratory judgment, and compensatory and punitive damages.

## COUNT IV
### VIOLATION OF THE *ZYNDA SETTLEMENT*
### (ON BEHALF OF PLAINTIFF UAW AS TO DEFENDANTS UIA AND DIRECTOR DALE IN HER OFFICIAL CAPACITY ONLY)

262)  Plaintiff UAW hereby incorporates by reference and reasserts the allegations set forth above.

263)  Defendants' collection activity while a protest or appeal is pending violates the *Zynda* Settlement Agreement.

264)  Specifically, this collection activity violates Paragraph 13 of the Agreement, which states that:

> *The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final*

*after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals.*

265)   Moreover, the Agency is prohibited from halting payments when due before a Determination has become final and the claimant has had notice and opportunity to be heard. Pursuant to Paragraph 14 of the *Zynda* Settlement:

> *During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination.*

266)   Defendants routinely suspend timely payments and institute collection activity while appeals on the merits or appeals on restitution Redeterminations are pending.

267)   Defendants decreased UI claimants' current unemployment benefits, withheld state tax returns, and garnished wages, in violation of the *Zynda* Settlement.

268)   Defendants therefore denied UI claimants and beneficiaries of the *Zynda* Settlement their property rights to state and federal unemployment benefits contrary to the United States Constitution's guarantee to due process. U.S. Const. amend. XIV, § 1.

269)   The Defendant Agency and its Director are liable for this violation.

270)   The Agency and its Director consented to the jurisdiction of this Court for this violation under *Zynda*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that this Court grant them the following relief:

A.   Assume jurisdiction over the claims in this matter;

B.   As to Plaintiff UAW, Order that the Agency be enjoined from policies and practices that violate the terms of the Settlement Agreement in *Zynda v. Arwood*;

C.   As to individual Plaintiffs and putative class members, Order to allow this matter to proceed as a class action;

D.   Declare that Defendants violated the due process rights of Plaintiffs and the Classes;

E.   Order that the Defendants take all actions necessary to process and ensure prompt payment of unemployment benefits pursuant to 42 U.S.C. § 503 and Defendants' fiduciary duty and constitutional duty to claimants;

F.   Order that the Defendants provide claimants the required due process and refrain from freezing or terminating benefits without providing notice and opportunity for hearing pre-termination of benefits;

G.   Enjoin Defendants from future violations of due process rights and require Defendants to establish proper procedures for the establishment and collection of unemployment benefit overpayments;

H.    Order that Defendants begin and/or continue to remove all previous set "stop payment" or similar internal indicators unless and until timely protests and appeals can be considered and Class members have notice and opportunity to be heard.

I.    Order that the Defendants take diligent action to ensure timeliness of payments, Determinations, and appeals, and specifically provide a definitive maximum adjudication time;

J.    Grant damages against individual Defendants acting under color of law and in favor of Plaintiffs and the Class members to compensate them for harm incurred, including harm for failure to pay benefits when due and for undertaking collections before a final Determination;

K.    Create a common fund for repayment of prematurely collected benefits and for the damages caused based on the lost time-value of money and the consequential losses associated with illegal stop payment and failure to pay when due;

L.    Grant reasonable attorneys' fees and costs; and

M.    Award any other relief that this Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs request a trial by jury on their claims.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Frances J. Hollander (P82180)
Attorneys for Plaintiffs
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
hollander@bwlawonline.com


EDWARD MACEY (P72939)
Attorney for Plaintiff UAW only
International Union UAW
8000 E Jefferson Ave
Detroit, MI 48214-3963
(313) 926-5616
emacey@uaw.net

Date: November 28, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2022, my paralegal, Natalie M. Walter, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David M. Blanchard
David M. Blanchard (P67190)
BLANCHARD & WALKER PLLC
*Attorney for Plaintiffs*
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com