**IN THE DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PAUL KREPS, ET AL,

                Plaintiffs,                        Case No. 2:22-cv-12020

v.

                                        Hon. Mark A. Goldsmith

MICHIGAN UNEMPLOYMENT
INSURANCE AGENCY, ET AL,

                Defendants.

_____

### PLAINTIFF UAW'S MOTION FOR PRELIMINARY INJUNCTION

1.      In compliance with Local Rule 7.1(a), I, David M. Blanchard, certify that I personally conferred with Defendants' counsel Shannon W. Husband by email and by telephone on Monday, December 5, 2022 regarding this Motion explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; and opposing counsel expressly denied concurrence.

2.      Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), through its undersigned counsel, respectfully moves this Court for an Order granting a Preliminary Injunction against Defendants, ordering that Defendants comply with Paragraphs 13 and 14 of the Settlement between Plaintiff UAW and Defendant Unemployment Insurance Agency ("UIA") in *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449

(E.D. Mich. filed April 21, 2015). Specifically, Plaintiff UAW requests an Order requiring that, during the pendency of this case, the UIA:

> a.      Halt all policies and practices that result in freezing payment of benefits when due after an initial Determination that a UI claimant is eligible for benefits and/or after the UI has begun payment of UI payments, unless and until a Determination or Redetermination reversing that eligibility decision has become final after notice and opportunity to be heard; and

> b.      Halt operation of all policies and practices that cause initiation or continuation of collection activity against any UI claimant unless and until the Agency Determination or Redetermination on which the collection activity is based has become final after the UI claimant has had notice and opportunity to respond.

3.      Defendants UIA and its Director Julia Dale, in her official capacity, have consented to jurisdiction of this Court for enforcing the *Zynda* Settlement.

4.      The UAW has a right to enforce its agreements with the UIA. *See, e.g.*, *Frazier v. Malek*, 591 F. App'x 468, 469 (6th Cir. 2015) (finding that the district court abused its discretion in denying the UAW's request that the court enforce a settlement agreement between the UAW and UIA, relying in part on the notion that "[r]etained jurisdiction vests the court with inherent authority to enforce its orders

2

by granting injunctive relief"). Defendant UIA has failed to bring its policies and practices into compliance with the *Zynda* Settlement and/or has adopted new non-compliant policies and practices.

5.  As discussed more fully in Plaintiff UAW's Brief in Support of Preliminary Injunction, the UIA promulgates policies and practices that:

c.  Suspend benefits based on non-final Determinations, before claimants have had notice and opportunity for a hearing; and

d.  Initiate collection activity based on non-final Determinations, before claimants have had notice and opportunity for a hearing on those Determinations, seeking to claw back benefits already paid.

6.  The Agency's non-compliant policies and practices cause irreparable harm by violating protections guaranteed in the *Zynda* Settlement. The UIA's failure to comply with *Zynda* makes the rights it guaranteed in the *Zynda* Settlement meaningless and denies UI claimants of property without due process of law.

7.  In support of this Motion, Plaintiff incorporates its contemporaneously filed brief.

8.  LOCAL RULE CERTIFICATION: I, David M. Blanchard, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is

no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

WHEREFORE, Plaintiff UAW respectfully requests that this Court grant this Motion and all relief sought herein, and order further relief as the Court deems equitable and just.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Frances J. Hollander (P82180)
Attorneys for Plaintiffs
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
Date: December 9, 2022          hollander@bwlawonline.com

**IN THE DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAUL KREPS, ET AL,

       Plaintiffs,                   Case No. 2:22-cv-12020

v.

                                       Hon. Mark A. Goldsmith

MICHIGAN UNEMPLOYMENT
INSURANCE AGENCY, ET AL,

       Defendants.

_____

## BRIEF IN SUPPORT OF PLAINTIFF UAW'S MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................... III

I.    INTRODUCTION ....................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................2

   A.  THE *ZYNDA* SETTLEMENT ....................................................2

   B.  DEFENDANT VIOLATE ¶ 14 OF THE *ZYNDA* SETTLEMENT BY
       FREEZING OR WITHHOLDING BENEFITS FOLLOWING A FAVORABLE
       DETERMINATION.................................................................3

   C.  DEFENDANTS VIOLATE ¶ 13 OF THE *ZYNDA* SETTLEMENT BY
       INITIATING AND CONTINUING COLLECTION ON ALLEGED
       OVERPAYMENT DESPITE PENDING PROTESTS OR APPEALS.....................4

III.  THE PRELIMINARY INJUNCTION STANDARD ...................................6

   A.  PLAINTIFF UAW IS LIKELY TO PREVAIL ON THE MERITS.......................7

   1.  *Defendants Violate the Zynda Settlement by Freezing or Withholding
       UI Benefits After a Favorable Determination or During Pending
       Protests or Appeals* .........................................................8

   2.  *Defendants Violate the Zynda Settlement by Initiating and
       Undertaking Collection Activity Before a Determination Has Become
       Final*..........................................................................12

   3.  *Defendants' Actions Harm Plaintiff UAW and UI Claimants by
       Depriving Them of Due Process Protections Negotiated in Zynda*........13

       a.  Preliminary Injunction Aligns with Protections in *Zynda*,
           Supreme Court Precedent, and Binding DOL Instruction......15

       b.  Preliminary Injunction Aligns with Michigan's Obligations
           to the Department of Labor........................................16

   B.  FAILURE TO ENJOIN DEFENDANTS' ACTIONS WILL CAUSE
       IRREPARABLE HARM TO PLAINTIFF UAW AND THE INTENDED
       BENEFICIARIES OF THE ZYNDA SETTLEMENT .........................17

   C.  INJUNCTION OF DEFENDANTS' ACTIONS WILL NOT CAUSE HARM
       TO THE AGENCY OR OTHERS .....................................19

   D.  INJUNCTION WILL SERVE THE PUBLIC INTEREST ...................23

IV.   CONCLUSION ....................................................................25

# INDEX OF AUTHORITIES

## CASES

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ..................................................................... 15

*Berg v. Shearer*, 755 F.2d 1343 (8th Cir. 1985) .................................... 14

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019) ............... 15, 21

*California Dep't. of Labor v. Java*, 402 U.S.  121 (1971) ................... 15, 16

*Connection Distributing Co. v. Reno*, 154 F 3d 281 (6th Cir. 1998) ..................... 24

*Drumright v. Padzieski*, 436 F. Supp. 310 (E.D. Mich. 1977) ............... 14

*Frazier v. Malek*, 591 F. App'x 468 (6th Cir. 2015) .................................. 7

*Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) ................................................................................................ 14, 22

*I. B. Mini-Mart II, Inc. v. JSC Corp.*, No. 296982, 2011 Mich. App. LEXIS 681 (Mich. Ct. App. Apr. 14, 2011) ....................................................... 7

*In re Feiler*, 218 F.3d 948 (9th Cir. 2000) .............................................. 15

*Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979) .......................................... 14

*Russell v. CSK Auto Corp.*, 739 F. App'x 785 (6th Cir. 2018) ................. 7

*Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) ...................................................................... 14

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754 (6th Cir. 2005) ...................... 6

*Welch v. Brown*, 551 F. App'x 804 (6th Cir. 2014) .................................. 6

*Zynda v. Arwood*, 175 F. Supp. 3d 791 (E.D. Mich. 2016) ..................... 16

## STATUTES

MCL 421.2(1)............................................................................................................23

MCL 421.32a............................................................................................................15

## REGULATIONS

UIPL 01-16................................................................................................................15

UIPL 01-96................................................................................................................15

## I.    INTRODUCTION

This is not the first time Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") has requested this Court for relief from actions taken by Defendant Unemployment Insurance Agency ("UIA"). In 2015, UAW was a plaintiff in *Zynda et al. v. Arwood et al.*, Case No. 2:15-cv-11449 (E.D. Mich. filed April 21, 2015). In 2017, that case resolved via a settlement wherein the UIA agreed to continue payment of benefits and to refrain from collection of overpayment during pending protests or appeals.

Three years later, Michigan's workforce was rocked by the COVID-19 pandemic. During this time of unprecedented economic impact, hundreds of thousands of Michiganders applied for unemployment benefits. Many of them received benefits for a short time but were later found ineligible. Many had payments frozen or withheld even though there was no final Determination on their claim, and they had not yet had notice and opportunity to be heard through their protest or appeal. The Agency now violates the *Zynda* agreement by freezing benefit payments and clawing back benefits paid even while pending protests or appeals languish.

Although Plaintiff UAW has requested outside of Court that Defendant UIA cure its noncompliance, UIA has declined to do so. Accordingly, Plaintiff UAW requests that this Court intervene and enter a Preliminary Injunction ordering Defendants to discontinue actions that violate the *Zynda* Agreement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. THE *ZYNDA* SETTLEMENT

On April 21, 2015, Plaintiff UAW, along with the individual plaintiffs, filed the *Zynda* lawsuit against Defendant UIA. The *Zynda* lawsuit related to a computer system the UIA used to detect and adjudicate fraud findings against unemployment claimants—the Michigan Integrated Data Automated System ("MiDAS"). Although MiDAS ostensibly provided efficient adjudication, it deprived UI claimants of due process by automatically accusing them of fraud, clawing back benefits, and seeking extraordinary penalties without providing claimants notice and opportunity to be heard.

Early in the litigation of the *Zynda* matter, the parties resolved the dispute via Settlement Agreement, signed on January 31, 2017 and entered as a Stipulated Order of Dismissal on February 2, 2017. *See* Ex. 1, *Zynda* Dismissal Order and Settlement Agreement (Feb. 2, 2017) (the "Agreement"). The Court retained jurisdiction to enforce the Settlement Agreement, and the Agency consented to "continued jurisdiction of this Court over interpretation." *Id.* at ¶ 21. Further, the Agency agreed to continue paying benefits when due, including during pending protests or appeals, and to refrain from initiating or continuing collection activity during pending protests or appeals. *Id.* at ¶¶ 13, 14.

In the space of only a few years, Defendants have again adopted non-

compliant policies and practices that automatically freeze benefits upon an adverse Determination before it has become final *and* collect against claimants who have pending protests or appeals. The primary questions for purposes of this Motion are (1) whether the UAW is likely to prevail in its allegations that these policies violate the *Zynda* Agreement; and (2) whether the challenged policies cause irreparable harm such that they should be preliminarily enjoined pending pursuit of this action.

### B. DEFENDANTS VIOLATE ¶ 14 OF THE *ZYNDA* SETTLEMENT BY FREEZING OR WITHHOLDING BENEFITS FOLLOWING A FAVORABLE DETERMINATION

The *Zynda* Settlement Agreement, Paragraph 14, provides:

> During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC [unemployment compensation] payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination.

Ex. 1, *Zynda* Agreement ¶ 14. Defendants violate this provision by stopping, withholding, or recalling benefits owed without providing a way to protest or appeal this denial of benefits and/or despite a (Re)determination in claimants' favor.

The Agency's own documents confirm this practice. In a document giving Agency staff common scenarios they might encounter, the Agency instructed staff to inform claimants inquiring about Benefit Payment Reviews ("BPRs") that there is no estimated time for review of a BPR—and hence no timeline by which benefits would be unfrozen. Ex. 2, Agency "Common scenarios with responses." In another

3

Agency document with sample responses to claimant questions, the Agency directed staff to inform claimants that benefits are not payable while a (Re)Determination is pending and information is being reviewed. Ex. 3, Keywords Regarding Determination; *see also* Ex. 4, "No Payment Statuses" Instructions (instructing Agency UIA Customer Service Hotline employees to tell claimants inquiring about a pending fact finding, adjudication, or protest, that the issue "is preventing your payment" and that "[t]here is nothing you can do to expedite the process.").

The Agency's practice of freezing benefits is confirmed by a former Agency call center worker who worked throughout 2021, who verified that Agency staff would arbitrarily put "Stop Payment Indicators" on an account or flag files for BPR. Ex. 5, Starr Doering Decl. ¶ 6(a). The worker verified that "[o]nce an SPI [Stop Payment Indicator] or BPR is put on a file, unemployment claimants would have their weekly benefits immediately halted with no Determination issued and thus no opportunity to protest or appeal, sometimes for months or years." *Id.* at ¶ 6(b).

### C. Defendants Violate ¶ 13 of the *Zynda* Settlement by Initiating and Continuing Collection on Alleged Overpayment Despite Pending Protests or Appeals

Settlement Agreement Paragraph 13 provides:

> The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals.

Ex. 1, Settlement ¶ 13. Defendants violate this provision by initiating or continuing collection activity against claimants with pending protests or appeals.

The Agency has instructed staff to "Add Garnishment" to accounts even when it was aware Determinations had not become final and protests and appeals were pending. *See* Ex. 6, October 15, 2021 Email with Agency Management (noting in an email with Agency managers that the Agency was putting "Add Garnishment Work Items" on accounts with protests). Even this year, the Agency's Director of Tax & Employer Services told a Benefit Operations Division Administrator that it was "not true" that protests would stop collection, nor was it true that claimants should not make payments when there are protests pending. Ex. 7, January 31, 2022 Email.

The Agency's own policies do not allow for a delay of collection until finality. The Agency's internal explanation for the "Collection Cycle of Benefits" states that "[a] collection case is established 41 days [after a finding of ineligibility for benefits] to recover the benefit overpayment(s)" without waiting for Determinations to become final. Ex. 8, Collection Cycle of Benefits. Based on this document, Agency policy does not delay the establishment of a collection case if a claimant has protested or appealed an adverse (Re)determination and it has not become final.

The Agency's practice of premature collection is also confirmed from a former Agency call center worker who worked throughout 2021, who confirmed that the Agency was aware it was collecting against claimants who did not have a final

(Re)determination. Ex. 5, Starr Doering Decl. ¶ 7. Even though the Agency was aware that claimants were reporting to the Agency that they were subjected to collection during a pending protest or appeal, the Agency did have any process or procedure to stop collection. Ex. 5, Starr Doering Decl. ¶ 7(a)-(b).

## III.   THE PRELIMINARY INJUNCTION STANDARD

"To determine whether an injunction is appropriate, a trial court must consider '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Welch v. Brown*, 551 F. App'x 804, 808 (6th Cir. 2014) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).

In compliance with the *Zynda* Agreement, Plaintiffs' counsel contacted the Agency to report alleged violations of the agreement. Ex. 9, September 2, 2021 Notice of Settlement Violation. The Agency denied that it was taking any actions that violated the agreement. Ex. 10, September 10, 2021 Letter. Counsel for Plaintiff UAW again requested to confer regarding the alleged violations, but Defendant refused to meet. Ex. 11, September 16, 2021 Email; *see also* Ex. 12, November 14, 2022 Letter ("We are requesting immediate cessation of the practices as to the individual claimants specifically identified in the *Kreps v. UIA et al.* Complaint and

entry of a Stipulated Court Order that the Agency will suspend practices violating Paragraphs 13 and 14 of the *Zynda* Settlement as to all UI Claimants.").[1]

## A. PLAINTIFF UAW IS LIKELY TO PREVAIL ON THE MERITS

"Under Michigan law, a breach of contract claim has four elements: '(1) the existence of a contract between the parties, (2) the terms of the contract require performance of a certain action by the defendant, (3) the defendant breached its obligation to perform, and (4) the plaintiff incurred damages as a result of the breach.'" *Russell v. CSK Auto Corp.*, 739 F. App'x 785, 797 (6th Cir. 2018) (quoting *I. B. Mini-Mart II, Inc. v. JSC Corp.*, No. 296982, 2011 Mich. App. LEXIS 681, at *6 (Mich. Ct. App. Apr. 14, 2011) (citation omitted) (Ex. 14); *Frazier v. Malek*, 591 F. App'x 468, 469 (6th Cir. 2015) ("Retained jurisdiction vests the court with inherent authority to enforce its orders by granting injunctive relief.") (citations omitted) (Ex. 15).

In this case, it is undisputed that the *Zynda* Settlement lays out clear actions that the Agency must refrain from in paragraphs 13 and 14. The Agency has violated the contract by withholding benefits from claimants when due and clawing back benefits that are not actually owed. The harm from the breach is clear. If Defendants

---

[1] Defendant has acknowledged that federal court is the venue to seek relief regarding a violation of the *Zynda* Agreement. *See* Ex. 13, Agency *Saunders* Reply Brief to Motion for Summary Disposition at 4 (stating that "[i]f an alleged violation of the agreement occurred, a claimant's remedy would be to report the alleged violation to Defendant Agency and then seek relief in federal court.").

fail to comply with the parameters negotiated in the *Zynda* Agreement, those protections will be meaningless. Should the Agency continue its noncompliance, thousands of Michiganders face the fear of struggling to buy food or pay for utilities and more because of Defendants' unlawful actions.

**1.** ***Defendants Violate the Zynda Settlement by Freezing or Withholding UI Benefits After a Favorable Determination or During Pending Protests or Appeals***

The *Zynda* Settlement Agreement Paragraph 14 provides:

> During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC [unemployment compensation] payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination.

Ex. 1, Settlement ¶ 14. The Settlement Agreement in *Zynda* requires the Agency to make payments "when due." *See* Ex. 1, *Zynda* Agreement. Yet Defendants continue to freeze or withhold benefits after a favorable Determination and/or during protests and appeals.

Defendants' own documents and claimant files for Plaintiffs Kreps, Boudrie, Brazil, Shipe, and I.F. demonstrate that Defendants are knowingly violating ¶ 14 of the *Zynda* Settlement. For example, the Agency found Plaintiff Robin Shipe eligible for benefits in October 2020, yet later found her ineligible for benefits and put a BPR on her file. Shipe repeatedly contacted the Agency, including by timely protesting and appealing. In messages to the Agency, Shipe stated her "total confusion"

because an Agency representative had "assured [her] she had everything needed to

complete [Shipe's] claim and would be no problem." Ex. 16, Shipe 000005.



Shipe asked, "When is somebody going to do my protest I filed. No one answers any

of my correspondence why?" and "Why am I getting no response to several of my

correspondence to you and my protest not being addressed?" Ex. 16, Shipe 000003.



Shipe reached out to the Agency, stating "I need a supervisor to call me about this as both these [Agency representatives] assured me they were all set and didn't need anything else." Ex. 16, Shipe 000005.

Sent: Wednesday, Jan 6, 2021 12:06:09 PM
Subject: non phone call /non payment/

This is your statement on the PUA. Your weekly benefit amount was calculated based on the income amount you provided. If you did not provide any income, you received the minimum PUA weekly benefit amount of 160.00. I do not need to send any tax stuff unless I am protesting the amount you have determined and I have not protested.

I need Sue and the lady that worked on my claim last week and called me and I agreed to the 78.00 adjustment to my 160.00 a week PUA

I need one of them to call me

As I do not have a 1099 from 2019 like my CPA told Sue I have a K1 I have owned the business since 1989 but about to loose it.

So I do not know WHAT YOU WANT from my tax record of 2019 until you tell me exactly what paper you want I cannot send you anything

I need a supervisor to call me about this as both these people assured me they were all set and didn't need anything else.

Also the lady last week assured she was calling me Monday of this week that this would be resolved and
Sue also assured me she was calling me during the month of December after several calls with this being resolved and she never did either

I have sent you my social security card picture my driver license and a picture of me

I expect someone to call me that really knows what is going on.

Also my quarterly reports are done on line in your system.

Do you want my Dr's statement of being diagnosed with corvid 19 on November 23rd 2020 too will that help

Just tell exactiv what document you want so I can get my money.

Although Shipe received an ALJ decision in her favor on November 28, 2022, which found she had timely appealed the Agency's notices and provided all necessary information, Shipe has still never received benefits—more than two years after the Agency originally found her eligible. Ex. 16, Shipe 000021-31.

Similarly, the Agency has had a "stop payment indicator" on Plaintiff Paul Kreps' payments since April 2020, despite Kreps' compliance with Agency requests for identity verification and an Agency decision that Kreps was who he said he was. Ex. 17, Kreps 000001. The Agency owes Kreps over $25,000.00 in benefits, and

Kreps has no administrative remedy to compel the Agency to pay these benefits.



For Plaintiff Zachary Brazil, the Agency placed a "stop payment indicator" on his account on or around May 16, 2020, after paying only a few weeks of benefits. Ex. 18, Brazil 000024. In November 2021, the Agency partially lifted the "indefinite stop period" to February 27, 2021, but the Agency has never restarted his benefit payments. Ex. 18, Brazil 000024. On September 13, 2021, the Agency issued an untimely Determination, finding Brazil ineligible for benefits for the first time.

Brazil's benefits have again been frozen while his appeal awaits adjudication. Ex. 18, Brazil 000020.

| Week | Weekly Benefit | FPUC | Deductions | Withheld | Benefit Payment | Status |
|---|---|---|---|---|---|---|
| 01-Aug-2020 | 160.00 | 0.00 | 0.00 | 22.60 | 0.00 | Stop Payment Indicator |
| 25-Jul-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 18-Jul-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 11-Jul-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 04-Jul-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 27-Jun-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 20-Jun-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 13-Jun-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 06-Jun-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 30-May-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 23-May-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 16-May-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 0.00 | Stop Payment Indicator |
| 09-May-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 651.70 | Payment for $651.70 issued 05/13/2020 |
| 02-May-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 651.70 | Payment for $651.70 issued 05/13/2020 |
| 25-Apr-2020 | 160.00 | 600.00 | 0.00 | 108.30 | 651.70 | Payment for $651.70 issued 04/29/2020 |
| 18-Apr-2020 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | Certification for this week was waived |

For Plaintiff I.F., the Agency froze her benefits in January 2021 by placing her account under BPR even though the only final (Re)determination was in I.F.'s favor, and despite her timely protest of an April 2021 adverse Determination. Ex. 19, IF 000004. Despite a July 29, 2022 Order finding her eligible for benefits, the Agency has still not paid I.F. benefits owed. Ex. 19, IF 29-30.

> ### 2. *Defendants Violate the Zynda Settlement by Initiating and Undertaking Collection Activity Before a Determination Has Become Final*

The *Zynda* plaintiffs fought for constitutional collection parameters that the Agency now admits it is not following. Specifically, the collection activity violates Paragraph 13 of the Agreement, which states:

> The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final

after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals.

Ex. 1, *Zynda* Agreement ¶ 13. The Agency cannot deny that the *Zynda* Agreement prohibits collection before finality. *See id*. Yet Defendants continue to collect against claimants who have pending protests or appeals.

Defendants' own documents and claimant files demonstrate that numerous UI claimants have been subject to collection activity during pending protests or appeals. *See, e.g.*, Ex. 20, Declaration of Harry Price (stating that the Agency was engaged in collection activity despite timely protests or appeals); Ex. 21, Declaration of Brian Price (same). The file of individual Plaintiffs in this case also demonstrate knowing violation of ¶ 13 of the *Zynda* Settlement. For Plaintiff Boudrie, despite a pending protest, the Agency has sent notices of collection. Ex. 22, Boudrie 000002-13. The Agency has demanded immediate repayment of the entire balance of $9,440.00, threatening garnishment, other collection activity, or even filing of a civil action if she did not repay the entire balance immediately. Ex. 22, Boudrie 000014-17.

### 3. *Defendants' Actions Harm Plaintiff UAW and UI Claimants by Depriving Them of Due Process Protections Negotiated in Zynda*

In *Zynda*, the parties carefully negotiated due process protections for UI claimants. Defendants' actions now negate the protections Plaintiff UAW fought hard for in the *Zynda* Settlement. Defendants' actions withholding or seizing property before a final Determination on the merits or withholding or freezing

payment during pending protests or appeals and after a Determination in the

claimant's favor, not only violates the *Zynda* Settlement and its protections, but

violates the due process rights of UI claimants. Failure to pay benefits timely, or

prematurely clawing back benefits, immediately and irreparably harms UI claimants

by depriving them of the protections negotiated in *Zynda*. These protections were

intended to systematize claimants' constitutional right to due process. Regardless of

whether claimants are ultimately found eligible or ineligible for benefits, the harm

has already occurred.

The Sixth Circuit more recently confirmed the rights UI claimants have to UI

benefits and to their wages and tax returns, finding that:

> Recipients of unemployment compensation have constitutionally-protected property interests in unemployment benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (citing *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963)); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985) ("Unemployment benefits are a property interest protected by the due process requirements of the fourteenth amendment."); *Ross v. Horn*, 598 F.2d 1312, 1317-18 (3d Cir. 1979) ("[A]ppellants certainly have a property right in receiving unemployment benefits to which they are entitled by statute . . . [t]hus it is clear that they may not be deprived of this right without due process."); *Drumright v. Padzieski*, 436 F. Supp. 310, 319 (E.D. Mich. 1977) ("[T]he due process clause . . . appl[ies] to terminations of unemployment compensation benefits because they are statutorily created property interests, within the meaning of the Fifth and Fourteenth Amendments."). Individuals also have constitutionally-protected property interests in their wages. *See Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 342, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) ("Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing . . . this prejudgment garnishment procedure [of employee wages]

> violates the fundamental principles of due process.") Individuals have protected property interests in their income tax returns. *See generally Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (holding that an individual has a protected property interest in something if he or she has "a legitimate claim of entitlement to it."); *see In re Feiler*, 218 F.3d 948, 955 (9th Cir. 2000) ("[T]he right to receive a tax refund constitutes an interest in property[.]")

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019). Defendants' failure to pay benefits "when due" and collection of wages, tax returns, and other claimant property before finality violates claimants' rights to due process.

### a. Preliminary Injunction Aligns with Protections in *Zynda*, Supreme Court Precedent, and Binding DOL Instruction

The protections in paragraphs 13 and 14 of the *Zynda* Agreement are supported by Supreme Court precedent and DOL instruction requiring prompt payment of UI benefits and continued payment during pending protests or appeals. *See, e.g.*, *California Dep't. of Labor v. Java*, 402 U.S. 121 (1971); Ex. 23, UIPL 01-16.[2]

---

[2] As part of the federal oversight process, the DOL issues Unemployment Insurance Program Letters ("UIPL"), which are binding instructions to state unemployment programs defining the administrative requirements of federal law. Ex. 24, UIPL 01-96. The DOL requires continued payment of benefits until a final determination of ineligibility. *See* Ex. 23, UIPL 01-16 (requiring states to "continue to make timely UC payments (if due) and wait to commence recovery of overpayments until an official determination of ineligibility is made"). The DOL also allows states to prohibit recovery collecting an overpayment unless it has become final, as Michigan has in MCL 421.32a. *See id.* (stating that "States may not initiate recovery of an overpayment until an official determination of the overpayment has been made" and noting that "State law may prohibit recovery of an overpayment until the

In *California Dep't. of Labor v. Java*, the plaintiff challenged California's policy by which payment of UI benefits is automatically stopped during a pending appeal. 402 U.S. at 128. The Court found that a state violates due process rights of unemployment claimants when it fails to provide notice and opportunity for a hearing before stopping benefit payments. 402 U.S. at 133. The Court further found that payments must be made at the initial determination stage and that payments must continue while an appeal is pending. *Id.* at 133-134. The Supreme Court ultimately enjoined California's practice, finding that halting payment of benefits because an appeal is pending violates claimants' constitutional rights. *Id.* at 135.

Here, the harm occurs the moment Defendants breach the provisions in the *Zynda* Agreement. Despite the possibility of future payment, irreparable damage has already been inflicted on claimants when they are deprived of benefits "when due" under *Zynda*. Therefore, Supreme Court precedent and implementing UIPLs support the requirements in ¶¶ 13 and 14 of *Zynda*.[3]

### b. Preliminary Injunction Aligns with Michigan's Obligations to the Department of Labor

Under the 2020 CARES Act, the federal government created additional direct pandemic unemployment subsidies wholly funded by federal money. To participate,

---

overpayment determination, including any appeal, has become final under state law").

[3] The *Zynda* Court recognized the binding nature of *Java*. *See Zynda v. Arwood*, 175 F. Supp. 3d 791, 812-813 (E.D. Mich. 2016) (Cleland, J.).

each state was required to enter into a contract with the DOL for administration of the programs. Those contracts required states to use existing state law process and procedure and apply it to the CARES Act benefits programs.

In a contract with the DOL, Michigan agreed that the UIA would not deduct anything from benefits and would not require repayment until opportunity for a fair hearing AND a final determination on the merits. *See, e.g.*, Ex. 25, Michigan Agreement Implementing the Relief for Workers Affected by Coronavirus Act (Addendum No. 2 ¶ VII, Addendum No. 3 ¶ IV, Addendum No. 4 ¶ IX (providing that "[n]o repayment shall be required, and no deduction shall be made, until a determination has been made, notice thereof and an opportunity for a fair hearing has been given to the individual, and the determination has become final.").[4] These obligations are in line with the requirements in paragraphs 13 and 14 of the *Zynda* Agreement.

## B. FAILURE TO ENJOIN DEFENDANTS' ACTIONS WILL CAUSE IRREPARABLE HARM TO PLAINTIFF UAW AND THE INTENDED BENEFICIARIES OF THE *ZYNDA* SETTLEMENT

Defendants' breaches of the *Zynda* Agreement are irreparably harming UI claimants right now by implementing policies and practices contrary to the

---

[4] The Department of Labor entered into similar agreements with other states. Ex. 26, Indiana Agreement Implementing the Relief for Workers Affected by Coronavirus Act; Ex. 27, Arkansas Agreement Implementing the Relief for Workers Affected by Coronavirus Act.

Agreement. Violations of the *Zynda* Agreement lead UI claimants, including Plaintiff UAW members, to face constant stress and ongoing economic and financial implications of continued collection activity. Because of Defendants' noncompliance, hundreds of thousands of dollars have been collected from blameless Michiganders, and there is no relief in sight. UI claimants are facing homelessness, hunger, transportation loss (making it even more difficult to have gainful employment), and additional debt.

Money damages are insufficient to make UI claimants whole when, if the Agency's policies and practices are allowed to continue, UI claimants face imminent harm that is both irreparable and capable of being repeated. The Agency's response to UAW's attempt to confer with it regarding the violations has made it quite clear that it has no intention to modify any of the practices at issue here. Additional harm is not speculative when Defendants have made it known they believe they do not have any responsibility to halt the violations alleged in the Complaint here.

For UI claimants, no appeal and no administrative process is available to unfreeze benefits. For example, although Plaintiffs Kreps and Shipe applied for benefits in 2020, they still have not received *any* benefits. The Agency owes Plaintiff Kreps over $25,000.00 and owes Plaintiff Shipe over $6,000.00. Ex. 16 Kreps 000001, Ex. 17, Shipe 000020. For Plaintiffs I.F. and Brazil, although they initially

received a small amount in benefits, their benefits were frozen and have not been unfrozen. Ex. 18, IF 000004, Ex. 19, Brazil 000009.

Even if benefits are ultimately paid out, or any money collected is returned, claimants still will have faced the harm of unpaid or clawed back benefits (1) in violation of the *Zynda* Agreement; and (2) before notice and opportunity to be heard on appeal. Furthermore, a claimant's need for the money is most urgent when the claimant is unemployed or shortly after his or her return to work. UI is intended to help claimants survive in difficult times—not to reimburse them months (or years) later when they are gainfully employed. This constitutional harm is irreparable and must be halted now.

### C. INJUNCTION OF DEFENDANTS' ACTIONS WILL NOT CAUSE HARM TO THE AGENCY OR OTHERS

Plaintiff UAW is not asking Defendants to provide any extraordinary relief; it is simply requesting that Defendants follow the provisions of the *Zynda* Settlement Agreement to which they agreed over five years ago. There is no harm or burden to Defendants in insisting on compliance with the *Zynda* agreement. If this Court ultimately finds for Defendants, the *only* harm is the temporary delay in collecting overpayments during the pendency of this litigation—much of which would be reimbursed to the federal government, rather than to the State of Michigan. Any funds that would instead be reimbursed to the Unemployment Trust Fund will not make a meaningful difference. The Agency's inability to root out and detect fraud

19

must be cured by dedication of resources and diligent action to investigate and determine fraud, not by punishing otherwise eligible UI Claimants with wholesale indefinite suspension of benefits.[5]

The burden on UI claimants is great when Defendants are permitted to freeze benefits arbitrarily and without explanation, and despite a (Re)determination in the claimant's favor, or to seize tax refunds and garnish wages and future UI benefits, without due process or a mechanism to recover that seized property. The families who rely on these streams of income face immediate and concrete harm to their livelihood when Defendants engage in the contested activity. When Defendants interfere with streams of income for families who are already financially stressed due to job loss and the ongoing pandemic, this impacts whether they can put food on the table. It impacts whether they are getting eviction notices. It impacts whether they can pay electric bills. And it can cause claimants to face even deeper debt when families are forced to take out high-interest loans to meet the necessities of life.

Without preliminary injunction, the burden on claimants could last for years while the state continues to litigate its noncompliance. The State's rampant abuse of Claimants' rights through "robofraud" adjudications sparked a wide series of lawsuits. *See, e.g.*, *Bauserman v. State of Michigan Unemployment Insurance*

---

[5] To the extent payment of benefits "when due" is halted for identity verification due to a good faith suspicion of fraud, Defendants must commit to process any identity verification and restart benefit payment within thirty days of the pause.

*Agency*, Case No. 2015-202-MM (Michigan Court of Claims, filed September 9, 2015); *Cahoo et al v. SAS Analytics Inc. et al.*, Case No. 2:17-cv-10657 (E.D. Mich. Filed March 2, 2017). Some of that litigation continues unresolved to this day or was only recently resolved. Other still-pending litigation against the Unemployment Insurance Agency relates to the State's violation of a settlement agreement intended to provide claimants with due process protections. *See, e.g.*, *Frazier et al. v. Malek et al.*, Case No. 2:96-cv-73419 (E.D. Mich. Filed July 30, 1996).

The UAW and other *Zynda* Parties chose a path to resolve their dispute relatively early in the process with the goal of remedying the abuses and creating guard rails for the Agency to avoid unconstitutional deprivations in the future. Unfortunately, when faced with increased claims during the pandemic, the Agency broke its promises in the Settlement Agreement and has, so far, refused to engage the UAW or its counsel to remedy the situation. The UAW has provided the State Defendants plenty of time after the height of the pandemic to conform with the Agreement, but the violations continue. The UIA's history of prolonged litigation and refusal to confer regarding the alleged violations highlights its unwillingness to cease its activity without a Court Order.

In contrast, the requested relief will alleviate the day-to-day financial stress that claimants face when the contested collection activity impacts their ability to provide the necessities to their families. If the injunction is denied and Plaintiffs

ultimately prevail, the resulting harm is that UI claimants will have been faced with ongoing constitutional violations, leading to continued frozen or withheld benefits or collection activity, threatening the wellbeing of themselves and all those for whom they care, in violation of the *Zynda* Agreement and the requirements of due process. The harm to UI claimants absent an injunction far outweighs the harm to Defendants if the injunction is granted.

As the Supreme Court affirmed more than 50 years ago:

> [W]hen welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process… [because the distinguishing element for UI claimants, unlike other groups] is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

*Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) (citations omitted). Defendants' actions violate the *Zynda* Agreement and disregard the Supreme Court's dictates related to the provision of welfare benefits. The *Zynda* settlement was designed to avoid prolonged litigation on what exactly are the constitutional and statutory requirements the State must follow. The parties agreed that the State would implement certain unambiguous policies. The UAW merely seeks a remedy to hold the State to its bargain. Once that bargain is upheld, the Court can take up the constitutional validity

of the Agency's practices and the ultimate issue of whether collection activities under these practices violates the constitutional rights of unemployment claimants.

### D. Injunction will Serve the Public Interest

The Michigan Employment Security Act ("MESA"), which provides for payment of UI benefits to Michiganders, provides an explicit statement of the public interest it is meant to protect. The Michigan Legislature made an explicit legislative finding of public policy as it relates to unemployment benefits. Section 2 of the MESA, entitled "Declaration of Public Policy," specifically provides:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his or her family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state.

MCL 421.2(1). This has been especially true during the COVID-19 pandemic, a time of extreme financial instability and uncertainty.

The public interest mandates enforcement of the protections of the *Zynda* Settlement and its roots in the Constitution. Because the requested injunction seeks

to enjoin Defendants temporarily from taking actions that Plaintiff UAW alleges violate the *Zynda* Agreement, this factor weighs heavily in favor of granting the relief sought. It is hard to imagine a public interest that would be served by allowing Defendants to hold UI payments indefinitely or to continue collecting such penalties that are in clear violation of the Parties' Settlement Agreement.

The public interest is always best served when government officials obey the protections afforded by the laws they purport to obey (and the same laws they enforce against citizens when it is to their own benefit). *See Connection Distributing Co. v. Reno*, 154 F. 3d 281, 288 (6th Cir. 1998) ("[T]he determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the [constitutional] challenge because it is always in the public interest to prevent the violation of a party's constitutional rights.").

The requested relief will serve the public interest that the MESA, and hence Defendants, purport to support. The requested relief will limit the negative economic consequences associated with involuntary unemployment and subsequent attempts by the Agency to unlawfully collect benefits already paid. UI claimants have felt the crushing force of unemployment. There is no public policy that would justify unimpeded violations of the *Zynda* Settlement—and the law—and the resulting harm for Michigan residents. In contrast, the state has no legitimate interest in allowing the ongoing wholesale deprivation of constitutional rights.

## IV.   CONCLUSION

Defendants' actions are in clear violation of paragraphs 13 and 14 of the *Zynda* Settlement. Plaintiff UAW met its burden to justify granting its request for a preliminary injunction. Plaintiff UAW requests an Order from the Court affirming the protections secured by the *Zynda* Settlement and prohibiting unconstitutional due process violations, as set forth in the UAW's motion and the Proposed Preliminary Injunction Order (Ex. 28, Proposed Order on Preliminary Injunction) and all further relief as the Court deems equitable and just.

<div style="margin-left:40%">

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Frances J. Hollander (P82180)
Attorneys for Plaintiff
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
hollander@bwlawonline.com

</div>

Date: December 9, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2022, my paralegal, Natalie M. Walter, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David M. Blanchard
David M. Blanchard (P67190)
Frances J. Hollander (P81180)
BLANCHARD & WALKER PLLC
*Attorney for Plaintiffs*
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
hollander@bwlawonline.com