UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL KREPS et al.,

      Plaintiffs,

Case No. 22-12020

vs.

HON. MARK A. GOLDSMITH

MICHIGAN UNEMPLOYMENT INSURANCE
AGENCY et al.,

      Defendants.

_____/

**OPINION & ORDER
(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS (Dkt. 19) AND (2) DENYING PLAINTIFF UAW'S MOTION FOR
PRELIMINARY INJUNCTION (Dkt. 16)**

Plaintiffs—individual claimants to benefits available under Michigan's unemployment compensation system, and the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW)—purport to bring a class action challenging the practices of Michigan's Unemployment Insurance Agency (UIA). Before the Court are (i) Defendants' motion to dismiss (Dkt. 19) and (ii) the UAW's motion for a preliminary injunction (Dkt. 16). For the reasons that follow, the Court grants in part and denies in part Defendants' motion to dismiss, and it denies the UAW's motion for a preliminary injunction.[1]

## I. BACKGROUND

Having reached a settlement agreement with officers of the UIA in a prior action, the UAW and individual Plaintiffs now allege that the UIA's present practices of halting unemployment

---

[1] The Court held a hearing on the motions on May 15, 2023. In addition to the motions, the briefing includes Plaintiffs' response to Defendants' motion to dismiss (Dkt. 23), Defendants' reply (Dkt. 25), Defendants' response to the motion for a preliminary injunction (Dkt. 22), and the UAW's reply (Dkt. 24).

insurance (UI) payments and recollecting on payments already made—without having made final determinations on claimants' eligibility—violate the settlement agreement and due process protections.  The Court proceeds by discussing (i) the role of the UIA and the procedures available for protesting its determinations on claimants' eligibility for UI payments; (ii) the allegations in and resolution of the prior litigation, <u>Zynda et al. v. Arwood et al.</u>, No. 2:15-cv-11449 (E.D. Mich.); and (iii) the allegations and claims now before this Court.

### A. Role of UIA and Procedures for Review of UIA Eligibility Decisions

The UIA operates Michigan's UI program pursuant to the Michigan Employment Security Act (MESA), Mich. Comp. L. 421.1 <u>et seq.</u>  Under 15 U.S.C. § 9021(f)(1), the UIA is also responsible for administering federal UI benefits, including pandemic unemployment assistance (PUA) under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 15 U.S.C. § 9001, <u>et seq.</u>

The UIA promulgates regulations regarding UI claims and designates representatives to make determinations as to the validity of those claims.  Mich. Comp. L. § 421.32(a).  After reviewing a claim, the UIA mails the claimant a "monetary determination" that "state[s] whether the claimant is monetarily eligible to receive unemployment benefits" and that "state[s] the claimant's weekly benefit rate."  § 421.32(b).

The MESA establishes procedures for challenging or "protesting" UIA determinations.[2] Following a determination, a claimant or other "interested party" may file an application with the UIA for a "redetermination."  § 421.32(e).  After this filing, the UIA must review the application and then choose to either (i) "issue a redetermination affirming, modifying, or reversing the prior

---

[2] The MESA sometimes refers to challenges made by interested parties to determinations and redeterminations, including timely appeals, as "protests."  <u>See, e.g.</u>, Mich. Comp. L. § 421.32a(3).

determination and stating the reasons for the redetermination," or (ii) "transfer the matter to an administrative law judge [(ALJ)] for a hearing." § 421.32a(1). If the UIA issues a redetermination, it must "promptly notify the interested parties of the redetermination," and the redetermination then becomes "final" unless "within 30 days after the mailing or personal service of a notice of the redetermination an appeal is filed with the unemployment agency for a hearing on the redetermination before an administrative law judge." Id.[3]

If a determination or redetermination is referred to an ALJ, the ALJ "shall afford all interested parties a reasonable opportunity for a fair hearing" and "shall decide the rights of the interested parties." § 421.33(1). An interested party also has a right to appeal ALJ findings and decisions to the Michigan compensation appellate commission. § 421.34(2). Additionally, Michigan circuit courts may "review questions of fact and law on the record made before the administrative law judge and the Michigan compensation appellate commission" and "may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record." § 421.38(1).

**B. Zynda Litigation and Settlement**

In 2015, a group of Michigan UI claimants and associated organizations—including the UAW—sued officials with the UIA in Zynda. These plaintiffs challenged UIA's "robo-adjudication system," alleging that UIA automatically and inaccurately flagged certain eligible beneficiaries for unemployment fraud, resulting in non-payment of benefits and unwarranted financial penalties. See Zynda Am. Compl. (No. 15-11449, Dkt. 13). Defendants were Sharon

---

[3] The UIA may also reconsider a determination even if there is no protest within 30 days of service of the notice; if this period has expired, the UIA "shall, for good cause, . . . reconsider a prior determination or redetermination," including upon a "request" filed with the UIA, if that request is made within a year of the mailing or personal service of the original determination. § 421.32a(2).

Moffett-Massey as director of the UIA and Steve Arwood as acting director of the Michigan Talent Investment Agency (TIA), both sued in their official capacities.  Id.  The UIA was alleged to be a division of the TIA.  Id. ¶ 14.  The Zynda plaintiffs brought claims based on several constitutional grounds including procedural due process, as well as the Social Security Act and the Michigan constitution.  Id. at 22–27.  All claims except for the plaintiffs' Eighth Amendment excessive fine claim survived the defendants' motion to dismiss.  See Zynda v. Arwood, 175 F. Supp. 3d 791, 813 (E.D. Mich. 2016).

The parties settled Zynda in 2017.  Though the UIA was not a named party to the litigation, Wanda Stokes—then director of the TIA—executed the settlement agreement on behalf of the UIA, the TIA, and the officer defendants.  See Zynda Settlement Ag. (No. 15-11449, Dkt. 51). The settlement agreement states that the defendants "specifically affirm[ed] Agency [i.e., UIA] compliance" with the agreed-upon "policies and practices" and that the UIA would "bring its policies and practices in compliance within 90 days of this Settlement Agreement."  Id. at PageID.1646.  The court entered a stipulated order of dismissal that, "[b]y consent and stipulation of the parties," dismissed the matter on the terms of the settlement agreement and retained jurisdiction "for the purpose of enforcing the terms of this Order and the Settlement Agreement." Id. at PageID.1643.

In the present suit, Plaintiffs call the Court's attention to two paragraphs of the Zynda settlement agreement, which Defendants are allegedly now breaching:

- Paragraph 13 of the settlement agreement states: "The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals."  Id. at PageID.1649.

- Paragraph 14 of the settlement agreement states: "During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue

4

to make timely UC [unemployment compensation] payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination." Id.

## C. Allegations in Present Suit

Five individual Plaintiffs present allegations based on their experiences with the UIA's treatment of their UI claims, which Plaintiffs divide into three grounds. Plaintiffs purport to bring a class action and assert a class for each one of their three grounds.

### 1. Ground 1: Claimants Found Eligible, But Payments Never Made

Plaintiffs allege that the UIA found certain claimants eligible for payments, but failed to make any payments, and did not provide adequate procedures by which claimants could challenge non-payment (Plaintiffs' asserted "prompt payment" class). Am. Compl. ¶¶ 150–171, 209–222. Plaintiff Paul Kreps's allegations fit this theory. Id. ¶¶ 46–50.[4]

### 2. Ground 2: Claimants Found Eligible, Then Found Ineligible; and Payments Stopped Before Redeterminations Were Final

Plaintiffs allege that the UIA found certain claimants eligible for payments, and made payments to those claimants; however, the UIA then issued redeterminations finding those claimants ineligible and stopped payments, without waiting for a final determination of ineligibility or providing adequate procedures for challenging the finding of ineligibility (Plaintiffs' asserted "prompt appeal" class). Am. Compl. ¶¶ 172–194, 209–222.[5] The allegations

---

[4] Kreps alleges that he filed for unemployment benefits, and the UIA determined he was eligible for the PUA program and issued a determination finding that he was entitled to a weekly benefit amount of $362. Am. Compl. ¶¶ 46–47. However, despite his compliance with all of the UIA's requests for information, Kreps has never received any payment benefits. Id. ¶¶ 48–49. Plaintiffs contend that "[t]here is no adverse Determination he can appeal through the administrative process" or other "remedy available to assert his right to timely unemployment assistance." Id. ¶¶ 49–50.

[5] In discussing this ground, Plaintiffs also take issue with "collection," Am. Compl. ¶ 172, and they allege that Defendants "seek to recoup overpayments from these Plaintiffs," id. ¶ 227.

of Plaintiffs Zachary Brazil, Robin Shipe, minor I.F., and Diana Boudrie align with this theory.

Id. ¶¶ 55–59, 70–104.[6]

_____

Plaintiffs acknowledge that this proposed class "overlaps in part" with their third asserted factual basis for relief: their proposed "early collections" class. Id. ¶ 197. To the extent that Plaintiffs seek relief based on Defendants' alleged attempt to recoup overpayments, the Court considers those claims as part of Plaintiffs' third ground.

[6] More specifically:

- Brazil alleges that he filed a claim for PUA benefits, and the UIA issued a monetary determination finding him entitled to a weekly benefit amount (WBA) of $160. Am. Compl. ¶¶ 70–71. But the UIA placed a "stop payment indicator" on Brazil's account, and "[m]ost" of his benefits have remained frozen. Id. ¶ 76. The UIA then issued a determination finding Brazil ineligible for benefits. Id. ¶ 77. Brazil alleges that he filed an appeal, but that the UIA has not processed his appeal and that his benefits have been frozen while he awaits adjudication on his appeal. Id. ¶¶ 78–79.

- Shipe alleges that she applied for benefits and received a monetary determination that she was eligible for a WBA of $160. Id. ¶ 83. The UIA then froze her benefits and put her file under a "benefit payment review" (BPR). Id. ¶ 85. Shipe subsequently received a new monetary determination finding her ineligible for benefits. Id. ¶ 86. She alleges that she protested this determination, but that the UIA never responded. Id. ¶¶ 86–87. She then received a redetermination again finding her ineligible, which Shipe appealed. Id. ¶¶ 88–89. Shipe alleges that her appeal was timely, but that the UIA logged her appeal as "late" in the UIA system and never provided her with a hearing. Id. ¶¶ 89–90. Instead, the UIA deleted her appeal and issued yet another redetermination finding her ineligible, which Shipe alleges she timely appealed, but which the UIA again treated as late. Id. ¶¶ 91–92.

- I.F. alleges that the UIA found her eligible for a WBA of $160 and then placed her account under a BPR and stopped paying benefits. Id. ¶¶ 98–99. The UIA then issued a monetary redetermination and found her eligible for a $160 WBA, and the UIA subsequently issued additional redeterminations again finding her eligible for benefits. Id. ¶¶ 100–101. I.F. alleges that the UIA then issued another determination finding her retroactively ineligible for benefits. Id. ¶ 102. She timely protested and appealed, but her benefits remained frozen while her protests were pending. Id. ¶ 103. The Unemployment Insurance Appeals Commission found her eligible for benefits, and all final determinations confirm that she is eligible for benefits, but I.F. alleges that she has still not received the suspended payments. Id. ¶ 104.

- Boudrie alleges that she was approved to receive and did receive UI benefits from the UIA. Id. ¶¶ 55–56. She then received a notice of determination reversing her eligibility. Id. ¶ 57. Boudrie protested the determination, but did not receive a response, and the UIA failed to process her protest or provide a redetermination that would allow her to request a hearing

**3.   Ground 3: Claimants Found Eligible, Then Found Ineligible; and UIA Sought Recollection of Overpayments Before Redeterminations Were Final**

Plaintiffs allege that the UIA found certain claimants eligible for UI payments, and it made those payments; however, it later found that those claimants were ineligible and sought to recollect payments already made, without waiting for a final determination of ineligibility or providing adequate procedures for challenging the finding of ineligibility (Plaintiffs' asserted "early collections" class).  Id. ¶¶ 195–208, 236–261.  Boudrie's allegations place her in this category.  Id. ¶¶ 62–66.[7]

**D. Defendants and Claims**

Plaintiffs name as Defendants (i) the UIA; (ii) Julia Dale, director of the UIA, sued in both her individual and official capacities; (iii) Kimberly Berry, the UIA's deputy director, sued in her individual capacity; (iii) Teresa Burns, the UIA's internal controls division administrator, sued in her individual capacity; and (iv) unnamed John Doe "state policy-makers," sued in their individual capacities.  Id. at PageID.131.

All Plaintiffs bring claims for (i) violations of procedural and substantive due process against all Defendants based on Ground 1, (ii) violations of procedural and substantive due process and for violation of the Zynda settlement agreement against all Defendants based on Ground 2, and (iii) violations of procedural and substantive due process and for violation of the Zynda

---

by an administrative judge.  Id. ¶ 59.

[7] Boudrie alleges that, after she attempted to protest a determination reversing her eligibility, the UIA sent Boudrie a notice of collection "demanding repayment of benefits paid and threatening garnishment or other collection activity if she did not make immediate monthly (re)payments of $125 toward the benefits previously paid."  Am. Compl. ¶ 62.  Boudrie alleges that the UIA has sent these bills "regularly" and "continues to take collection activity."  Id. ¶¶ 63, 65.  Plaintiffs submit that Boudrie "has not had an opportunity to exhaust her appeal rights" and that "[t]here is no state administrative remedy to stop collection activity or require her protest to be heard."  Id. ¶¶ 65–66.

settlement agreement against all Defendants based on Ground 3. See id. ¶¶ 209–261. Additionally, the UAW alone brings a separate claim against the UIA and Dale in her official capacity for violation of the Zynda agreement. Id. ¶¶ 262–270.

Plaintiffs seek both (i) injunctive relief and (ii) monetary damages in the form of "compensat[ion] for harm incurred, including harm for failure to pay benefits when due and for undertaking collections before a final Determination," and "reasonable attorneys' fees and costs." Id. at PageID.189–190.

## II. ANALYSIS

The Court first considers the grounds asserted in Defendants' motion to dismiss, and it then turns to the UAW's motion for a preliminary injunction.

### A. Motion to Dismiss[8]

The Court begins by considering whether Plaintiffs' claims should be narrowed or dismissed due to (i) restrictions on claims brought under 42 U.S.C. § 1983, (ii) sovereign immunity under the Eleventh Amendment, or (iii) doctrines of abstention. It then considers the plausibility of Plaintiffs' alleged procedural and substantive due process claims, including in regard to Defendants' qualified immunity defense and the liability of individual officers. Finally, the Court considers and rejects Defendants' argument that the UAW lacks standing to enforce a settlement agreement to which it was a party.

---

[8] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

### 1.  "Persons" and Relief Available Under 42 U.S.C. § 1983

Plaintiffs bring their due process claims under § 1983.  Defendants argue that the UIA is not a "person" subject to suit under § 1983, see Br. in Supp. Mot. to Dismiss at 5–6, and Plaintiffs agree, though they argue that the UIA remains "subject to this lawsuit" because it "consented to this Court's jurisdiction" per the Zynda agreement, Br. in Supp. Resp. Mot. to Dismiss at 7 n.1. Defendants are correct that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  The Court grants Defendants' motion to dismiss as to due process claims brought against the UIA.

Defendants also submit that Dale cannot be sued under § 1983 for monetary damages in her official capacity, though they acknowledge that she can be sued under § 1983 for injunctive relief in her official capacity.  Br. in Supp. Mot. to Dismiss at 5–6 (citing Will, 491 U.S. at 71); see also Zynda, 175 F. Supp. 3d at 801 (allowing plaintiffs' § 1983 claim for injunctive relief against UIA director to proceed over argument that she was not a "person").  Plaintiffs do not object to these assertions, but they argue that they can seek monetary damages against Dale and other individual Defendants in their individual capacities.  See Br. in Supp. Resp. at 8–10. Defendants take no position on Plaintiffs' point, which the Court finds meritorious.  See Kanuszewski v. Mich. Dep't of Health & Hum. Servs., 927 F.3d 396, 413 (6th Cir. 2019) ("The Eleventh Amendment . . . does not bar suits for damages against officers in their personal capacity under § 1983.") (punctuation modified).

The Court grants Defendants' motion to dismiss Plaintiffs' due process claims for monetary damages against Dale in her official capacity.  Plaintiffs' due process claims survive (i) against Dale in her official capacity, to the extent that Plaintiffs seek injunctive relief; and (ii)

against the individual Defendants in their individual capacities, to the extent Plaintiffs seek monetary damages.

### 2. Eleventh Amendment Sovereign Immunity

Defendants argue that sovereign immunity bars Plaintiffs' suit under the Eleventh Amendment because a state—including state agencies and state officials—cannot be sued in federal court unless these parties unequivocally consent to suit or Congress allows for suit via statute.  See Br. in Supp. Mot. to Dismiss at 3–5 (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996)).

The Court finds that sovereign immunity narrows Plaintiffs' suit only in part.  As to the due process claims, Plaintiffs correctly submit that "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law."  Br. in Supp. Resp. Mot. to Dismiss at 5 (quoting Price v. Medicaid Dir., 838 F. 3d 739, 746–747 (6th Cir. 2016) (punctuation modified)).  Defendants do not respond to this argument.  Like in Zynda, Plaintiffs may proceed with their § 1983 claims against the UIA director sued in her official capacity "with such declaratory and injunctive requests as are truly prospective."  175 F. Supp. 3d at 801.

Plaintiffs also argue the Eleventh Amendment does not bar their suit for damages against individuals sued in their individual capacity, see Br. in Supp. Resp. Mot. to Dismiss at 6, which argument Defendants do not address.  Plaintiffs' caselaw demonstrates that their position is correct. See Pucci v. Nineteenth Dist. Ct., 628 F.3d 752, 765 (6th Cir. 2010) (affirming rejection of sovereign immunity asserted by defendant state-court judge in § 1983 suit, explaining: "Although [defendant] is entitled to sovereign immunity in his official capacity with respect to damages and retrospective relief, the sovereign-immunity doctrine does not bar [plaintiff's] suit against

[defendant] in his individual capacity"); <u>Ecclesiastical Ord. of the Ism of Am, Inc. v. Chasin</u>, 845 F.2d 113, 116 (6th Cir. 1988) ("The doctrine of sovereign immunity does not bar damage actions against federal officials who have been sued in their individual capacities for violation of a plaintiff's constitutional rights.").

As to Defendants' claims under the <u>Zynda</u> agreement, Plaintiffs submit that the UIA and Dale have consented to this Court's jurisdiction under the terms of the <u>Zynda</u> agreement.  <u>See</u> Br. in Supp. Resp. Mot. to Dismiss at 4–5.  Defendants argue that they did not waive immunity when consenting to a settlement in the <u>Zynda</u> litigation.  Br. in Supp. Mot. to Dismiss at 4–5.  They deny that the UIA was a party to the <u>Zynda</u> agreement; they submit that the only <u>Zynda</u> defendants were the then-directors of the TIA and the UIA, both sued in their official capacities.  Br. in Supp. Reply in Supp. Mot. to Dismiss at 1.  In their view, "[a]t best," the <u>Zynda</u> settlement applies to Dale only as the previous UIA director's "successor."  <u>Id.</u>  They also assert that "any waiver would be limited to issues specifically addressed in the <u>Zynda</u> settlement agreement," as the question of a waiver of sovereign immunity "'is a case-specific inquiry.'"  <u>Id.</u> at 5 (quoting <u>Barachkov v. Davis</u>, 580 F. App'x 288, 299–300 (6th Cir. 2014) (affirming finding that defendant division of district court had not waived sovereign immunity by asserting defense "somewhat belated[ly]")).

The Court finds that the Eleventh Amendment does not bar enforcement of the <u>Zynda</u> settlement agreement against the UIA and its director.  "The Eleventh Amendment is <u>sui generis</u> as a jurisdictional issue, having a quasi-jurisdictional nature, . . . one that can be waived or abrogated."  <u>Russell v. Lundergan-Grimes</u>, 784 F.3d 1037, 1046 (6th Cir. 2015) (punctuation modified).  The UIA has consented to this Court's jurisdiction for purposes of enforcing the settlement agreement, which explicitly states:

> The Federal District Court for the Eastern District of Michigan shall retain jurisdiction over this action.  The Parties consent to continued jurisdiction of this

Court over interpretation of the terms, enforcement, and compliance with this Settlement Agreement.

Zynda Settlement Ag. at PageID.1651.  Further, the stipulated order of dismissal states that, "[b]y consent and stipulation," "[t]he Court shall retain jurisdiction of this matter pursuant to the terms of the Settlement Agreement and for the purpose of enforcing the terms of this Order and the Settlement Agreement." Id. at PageID.1643.  The director of the TIA executed that agreement on behalf of the UIA and the defendant officers sued in their official capacities.  Id. at PageID.1655.

The United States Court of Appeals for the Sixth Circuit has relied on a state agency's "decision to . . . sign a consent decree" to find "a clear indication of [its] intent to waive its sovereign immunity." Bergmann v. Mich. State Transp. Comm'n, 665 F.3d 681, 683 (6th Cir. 2011) (punctuation modified).  Similarly, a settlement agreement that reserves a court's jurisdiction to enforce that agreement may indicate a waiver of sovereign immunity.  See Marisol A. v. Giuliani, 157 F. Supp. 2d 303, 315 (S.D.N.Y. 2001) (finding that administrators of New York child welfare system "unequivocally waived their Eleventh Amendment immunity defense for the purpose of [] enforcement" of settlement agreement, in part because "Defendants clearly consented to this Court's jurisdiction to enforce the Agreement"); In re Fraser, 75 F. Supp. 2d 572, 582 (E.D. Tex. 1999) ("A state may [] waive its sovereign immunity by entering into a settlement agreement in federal court.").  The same result is appropriate here, where the parties contracted to vest this Court with jurisdiction to enforce the Zynda settlement agreement.[9]

However, Defendants are correct that their consent to this Court's jurisdiction to enforce the Zynda agreement does not constitute consent to suit for all matters.  See, e.g., Satcher v. Univ.

---

[9] The Court also notes that the parties to Zynda executed the settlement agreement only after the defendants had presented a sovereign immunity defense, which the court rejected in part, consistent with the principles of sovereign immunity discussed by this Court in the present case. See Zynda, 175 F. Supp. 3d at 799–801.

of Ark. at Pine Bluff Bd. of Trustees, 558 F.3d 731, 735 (8th Cir. 2009) (finding that defendant university board could rely on immunity as to second suit, notwithstanding its execution of settlement agreement with same plaintiff as to first suit, explaining: "merely because the settlement agreement allowed the court to continue to exercise jurisdiction over that agreement does not constitute a clear and unequivocal waiver of all arguments about the court's jurisdiction in any other case [plaintiff] might bring"). The Zynda settlement agreement is grounds for this Court to assert jurisdiction for purposes of enforcing that settlement agreement, but for no other purpose.

### 3. Abstention

Defendants assert that this Court should abstain from hearing this case because either of two doctrines of abstention should apply: Burford abstention and Colorado River abstention. Br. in Supp. Mot. to Dismiss at 16–18.[10] Neither doctrine is appropriate here.

Defendants argue that Burford abstention is appropriate because this suit involves a complex state regulatory scheme. Id. at 16–17. But Burford abstention is appropriate "[w]hen a case presents an unanswered question of state law" and when a federal court's resolution of that question "would be disruptive of state efforts to establish a coherent policy." Gray v. Bush, 628 F.3d 779, 784 (6th Cir. 2010) (reversing district court's decision to abstain under Burford) (punctuation modified). Defendants have identified no unanswered question of state law in this case. Like the Court in Zynda, this Court "must reject the Burford abstention argument." 175 F. Supp. 3d at 802 ("Resolution of this case would not require the court to adjudicate 'difficult

---

[10] Burford abstention may be applicable where "[c]onflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts . . . ." Burford v. Sun Oil Co., 319 U.S. 315, 333–334 (1943). Colorado River abstention may be applicable when various "considerations of wise judicial administration" weigh in favor of a federal court deferring to a parallel proceeding. Colorado River Water Conservation Dist. v. United States, 424 US 800, 817 (1976) (punctuation modified).

questions of state law' . . . .  Unlike a claim that a state has misapplied its own regulatory scheme by failing to consider some relevant state-law factor, the claim presented in this case involve[s] federal Constitutional law.").

Nor does Colorado River abstention apply.  This doctrine requires "concurrent state and federal actions" that are "parallel."  Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998).  Defendants point to Saunders v. Mich. Unemployment Ins. Agency, No. 2022-000007-MM, a case brought in the Michigan Court of Claims in which plaintiffs allege that the UIA's recollection of overpayments violates the Michigan constitution.

However, even if Saunders is a parallel proceeding to the case before this Court, the Colorado River factors collectively weigh against abstention.[11]  The only factor that Defendants specifically identify as one that weighs in favor of abstention is the avoidance of piecemeal litigation.  See Br. in Supp. Mot. to Dismiss at 19.  But abstention here would not "avoid[] piecemeal litigation."  S2 Yachts, 855 F. App'x at 279.  Saunders may implicate Boudrie's concerns asserted under Plaintiffs' Ground 3, but—as counsel for Defendants acknowledged during the hearing—Saunders has no bearing on the other Plaintiffs' claims under Grounds 1 and 2.  Thus, continued proceedings will be necessary in this Court regardless of the disposition of Saunders.  Other Colorado River factors also counsel in favor of an exercise of this Court's

---

[11] The Sixth Circuit looks to eight factors when consider whether Colorado River abstention applies : "(1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction."  S2 Yachts, Inc. v. ERH Marine Corp., 855 F. App'x 273, 279 (6th Cir. 2021) (punctuation modified).  "This analysis does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  Id. (punctuation modified).

jurisdiction, including "the source of governing law," as Plaintiffs' claims rest on the Constitution and the terms of a settlement agreement which this Court has explicit jurisdiction to enforce. Id. (punctuation modified).

Federal courts generally have an "unflagging obligation" to exercise their jurisdiction, and the "extraordinary and narrow exception" to that duty provided by abstention doctrines is not applicable in this case. Quackenbush v. Allstate Ins. Co., 517 US 706, 716, 728 (1996) (punctuation modified).

### 4. Plausible Statement of Procedural Due Process Claims

Defendants argue that Plaintiffs have failed to state a procedural due process claim. Br. in Supp. Mot. to Dismiss at 8–11. "To state their procedural due process claim, Plaintiffs must establish three elements: (1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." Cahoo v. SAS Analytics Inc., 912 F.3d 887, 900 (6th Cir. 2019).

Defendants concede that caselaw supports Plaintiffs' position that UI payments are protected property interests, but Defendants argue that Plaintiffs have received adequate pre-deprivation procedure. See Br. in Supp. Mot. to Dismiss at 9.

Plaintiffs have specifically alleged that they were found eligible for UI payments, and that the UIA and its officials—without waiting to give Plaintiffs any opportunity to protest through the procedures established under state law—(i) declined to make any UI payments or halted UI payments upon a finding of Plaintiffs' ineligibility (Grounds 1 and 2), or (ii) attempted to claw back payments already made (Ground 3). See Am. Compl. ¶¶ 46–104. Several courts—including the Sixth Circuit—have found that claimants brought plausible procedural due process claims

where they were found eligible to receive unemployment benefits but were denied those benefits without the opportunity to challenge the denials.[12]

Defendants are correct that these cases are distinguishable in some respects. See Br. in Supp. Reply in Supp. Mot. to Dismiss at 3. The policy challenged in Cahoo, for example, allegedly "pose[d] a profound possibility of erroneous deprivations" given the high rate at which claimants' claims were designated as fraudulent via automatic determinations. 912 F.3d at 902. But these distinctions do not diminish Plaintiffs' "significant interest in maintaining eligibility for unemployment benefits," nor weaken the fact that the UIA's interest in efficiently running the UI program is "not so great as to negate the need for adequate notice before interfering with these substantial property interests." Id. Even if the error rate in the UIA's current alleged policy is not as egregious as that alleged in Cahoo, Plaintiffs have plausibly alleged a procedural due process claim by pleading that their UI benefits were "terminated" before they received "an opportunity to be heard." Taylor, 1989 WL 281904, at *5.

---

[12] See Cahoo, 912 F.3d at 901–903 (affirming denial of motion to dismiss procedural due process claims where plaintiffs had "plausibly alleged that [UIA officials] did not provide them with adequate pre-deprivation notice or an opportunity to be heard" before UIA program automatically determined their claims were fraudulent and terminated their UI benefits) (capitalization modified); In re Bank of Am. Cal. Unemployment Benefits Litig., No. 21-MD-2992, 2023 WL 3668535, at *3, *35–*37 (S.D. Cal. May 25, 2023) (denying administrator of unemployment benefits' motion to dismiss procedural due process claims based on administrator's policy of automatically freezing unemployment benefits upon suspicion of fraud "without notice of explanation," explaining that, "once [the agency] determined that Plaintiffs were eligible, Plaintiffs had a protected property interest in the benefits," and the allegations did not "suggest that [administrator] provided any post-deprivation notice or opportunity to be heard"); Taylor v. Steinbacher, No. C83-419, 1989 WL 281904, at *1, *5 (N.D. Ohio May 22, 1989) (granting summary judgment to plaintiff unemployed workers challenging Ohio policy of "terminat[ing] the benefits of otherwise eligible unemployed workers . . . without giving the unemployed worker prior notice and a chance for a pre-termination hearing" at which to "cure his ineligibility," stating: "Due process requires that a claimant whose unemployment compensation benefits are terminated receive an opportunity to be heard.").

Defendants' arguments to the contrary lack merit.  They note that the Social Security Act does not require a pre-deprivation hearing, see Br. in Supp. Mot. to Dismiss at 9; however, this fact does not impact the caselaw establishing that the termination of UI payments requires pre-deprivation process under the Constitution.  Defendants argue that Plaintiffs "have acknowledged sufficient notice" because they attempted to protest the UIA's non-payment, see Br. in Supp. Mot. to Dismiss at 10, but this argument disregards Plaintiffs' allegations that their payments were halted before they attempted to appeal determinations of ineligibility and that UIA processes have denied them the opportunity for appeal.  And Defendants' submission that Plaintiffs merely "challenge the time it has taken" for the UIA to adjudicate their protests overlooks Plaintiffs' plausible allegations that their benefits should not be suspended before they have the chance to present their case.  Id. at 11.[13]

As to Ground 3 in particular, Defendants acknowledge that their attempts to recollect UI payments made to Boudrie were "inadvertent" and "inconsistent with the MES Act," but they suggest that Boudrie should properly present her challenge not through a due process claim but through enforcement of the Zynda settlement agreement.  Id. at 13–14.  However, the availability of the settlement agreement does not negate Boudrie's right to assert a constitutional violation. Defendants also note that they did not actually collect any monies from Boudrie, id. at 13, but Boudrie's allegation that the UIA sent bills demanding repayment of UI benefits after her

---

[13] Defendants also argue that "Kreps has failed to affirmatively allege that he has not been given notice and opportunity to be heard regarding any outstanding issues that may affect [his] eligibility or qualification."  Br. in Supp. Mot. to Dismiss at 10.  But Kreps plausibly alleges that he has been denied any procedural opportunity to challenge non-payment because "[t]here is no adverse Determination he can appeal through the administrative process" or other "remedy available to assert his right to timely unemployment assistance."  Am. Compl. ¶¶ 49–50.  These allegations suffice to state a lack of adequate process prior to the deprivation of a protected interest.

eligibility was reversed but before she had the opportunity to challenge the reversal—an admitted breach of the procedural protections established under state law—stands unchallenged.

Plaintiffs in this case, like those in <u>Cahoo</u>, have "adequately alleged that the Individual Agency Defendants did not provide them with sufficient process before depriving them of their protected property interests."  912 F.3d at 902.

### 5.  Violation of Clearly Established Rights

To overcome Defendants' qualified immunity defense, Plaintiffs must plausibly plead that the constitutional right allegedly violated by Defendants was "clearly established"—i.e., that "the contours of the right are sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right."  <u>Id.</u>   Defendants argue that Plaintiffs' allegations fail to implicate a clearly established right.  <u>See</u> Br. in Supp. Mot. to Dismiss at 14–16.

To the contrary, Sixth Circuit precedent confirms that—on Plaintiffs' well-pleaded allegations—"Plaintiffs' rights to adequate notice and a pre-deprivation hearing were clearly established." <u>Cahoo</u>, 912 F.3d at 903.  Like in <u>Cahoo</u>, "every reasonable Agency employee should have known that depriving Plaintiffs of their property interests without adequate notice or a meaningful opportunity to be heard violated due process."  <u>Id.</u> at 904.  Considering <u>Cahoo</u> at the summary-judgment stage, the Sixth Circuit reaffirmed that "the complaint's allegation" in <u>Cahoo</u> that a UIA system had "failed to provide claimants with pre-deprivation notice or process before automatically shutting off unemployment benefits" sufficed to "allege[] a clearly established right to pre-deprivation notice and a hearing."  <u>Cahoo v. SAS Inst., Inc.</u>, 71 F.4th 401 (6th Cir. 2023).[14] The same result is proper here.

---

[14] On summary judgment, based on "evidence obtained in discovery," the Sixth Circuit found that the <u>Cahoo</u> plaintiffs could not demonstrate that the allegedly violated constitutional rights were "clearly established."  71 F.4th 401.  However, that result depended on a factual finding that is

Plaintiffs are "warned" that, to prevail at the summary-judgment stage on their argument that Defendants violated their clearly established rights, they will "need to substantiate [their] allegations" with evidence.  Id. (punctuation modified).  But at the pleading stage, the Court rejects Defendants' qualified immunity defense.

### 6. Liability of Individual Officers

To have sufficient personal involvement to be found liable for a constitutional violation, an individual must have "encouraged . . .[,] participat[ed] in . . . [,] authorized, approved or knowingly acquiesced in" that violation.  Doe ex rel. Doe v. City of Roseville, 296 F.3d 431, 440 (6th Cir. 2002).  Defendants argue that the pleadings here are "insufficient to demonstrate that any of [Dale, Berry, and Burns] were personally involved in any claims decisions regarding the Plaintiffs."  Br. in Supp. Mot. to Dismiss at 19–20.  Plaintiffs respond that they have adequately alleged that "Defendants were aware of and orchestrated the violations" and that Dale, Berry, and Burns "colluded to promulgate and enforce processes and procedures that violate the federal constitution."  Id. at 6–7 (citing Am. Compl. ¶¶ 24–26, 29–32).[15]

---

starkly different from than the allegations in the Cahoo complaint and in the present case. Discovery in Cahoo revealed that, before cutting off unemployment benefits, the UIA had sent notices to claimants "provid[ing] a 30-day period to protest the determination."  Id.  Conversely, in the case before this Court, Plaintiffs plausibly allege that their benefits were halted prior to any notice or opportunity to protest.  These allegations suffice to overcome a qualified immunity defense.  See Cahoo, 912 F.3d at 903–904; Cahoo, 71 F.4th 401.

[15] The sections of the amended complaint cited by Plaintiffs allege that Dale "is responsible to ensure that the Agency's procedures and automated systems comply with state and federal law," that Berry is the assigned liaison to ensure that Agency procedures comply with the prior settlement in Zynda, that Burns "is responsible to ensure that Agency Procedures and automated processes comply with state and federal law and with the Zynda Settlement Agreement," and that these individuals "knew or should have known," or were "on actual notice that," the UIA's "automated processes and procedures" violated claimant's constitutional rights.  Am. Compl. ¶¶ 24–26.  Plaintiffs further allege that these individuals were "aware that the policies and automated procedures they promulgated and/or continued violated clearly established law," including because

The plaintiffs in Cahoo made sufficient allegations to maintain claims against individual officials who—despite their knowledge that claimants had been denied UI benefits—directed their subordinates "to conduct business as usual" and "continued to pursue the same defective policies." Cahoo, 912 F.3d at 901, 901 n.6 (punctuation modified).  Plaintiffs in Cahoo established individual liability at the pleading stage even without alleging that the defendant officials had personal involvement in any particular plaintiff's case.  See id. at 901 n.6.

Similarly, Plaintiffs in this case allege that the individual Defendants were aware of and responsible for processes that resulted in the deprivation of Plaintiffs' protected interests without providing any opportunity to be heard, and thus that they "implicitly authorized, approved, or knowingly acquiesced in the policies and procedures at issue."  Am. Compl. ¶ 31.  Like in Cahoo, "Plaintiffs will need to substantiate these allegations to survive a motion for summary judgment," but "the Court finds that Plaintiffs sufficiently alleged conduct by each Individual Agency Defendant to survive a motion to dismiss."  912 F.3d at 901.

### 7.  Statement of Substantive Due Process Claims

Plaintiffs pair their procedural due process claims with substantive due process claims, without differentiating between these two theories.  See, e.g., Am. Compl. ¶ 40 ("Defendants have deprived Plaintiffs of unemployment benefits without providing mandatory procedural and substantive due process . . . ."); id. ¶¶ 140, 221, 234.

Defendants argue that Plaintiffs have failed to state a substantive due process claim, as state-created benefits like UI payments are not "fundamental" rights that implicate substantive due process protection.  See Br. in Supp. Mot. to Dismiss at 11–12.  As Defendants observe, see Br. in

---

of the settlement in Zynda, and that they "implicitly authorized, approved, or knowingly acquiesced in the policies and procedures at issue."  Id. ¶¶ 29–32.

Supp. Reply in Supp. Mot. to Dismiss at 3, Plaintiffs make no response to this argument; their response brief does not discuss "substantive due process" at all, see Br. in Supp. Resp. to Mot. to Dismiss.  "When a plaintiff does not respond to a defendant's argument, the plaintiff waives any opposition to the argument." Hardin v. Bank of Am., N.A., No. 22-cv-10023, 2022 WL 3568568, at *2 (E.D. Mich. Aug. 18, 2022) (granting motion to dismiss).  The Court grants Defendants' motion to dismiss as to Plaintiffs' substantive due process claims.

### 8.  UAW Standing

Defendants argue that the UAW has no standing to bring this suit and should be dismissed as a plaintiff.  Br. in Supp. Mot. to Dismiss at 22–24.  In response, Plaintiffs insist that the UAW has standing to enforce the terms of the Zynda settlement agreement, to which it was a party.  See Br. in Supp. Resp. Mot. to Dismiss at 22–24.

Plaintiffs point persuasively to Frazier v. Malek, where—like here—the UAW and multiple individual UI claimants had executed a settlement agreement with the UIA.  591 F. App'x 468, 468–469 (6th Cir. 2015).  When the UAW attempted to enforce that agreement's prohibition on certain collection activity more than 16 years later, the UAW pointed to the injuries of new claimants, not those of parties to the original contract.  Id.; Frazier v. Calille, No. 96-73419, 2014 WL 1319699, at *3 (E.D. Mich. Mar. 31, 2014).  The district court found that the UIA lacked "standing to enforce [the] agreement," characterizing the UAW as a "part[y] seeking benefits on behalf of non-parties."  2014 WL 1319699, at *3.  The court noted that it had "no authority" to enter "an injunction and monetary remedies for the benefit of past, current and future claimants before the Agency who were not parties to the Settlement Agreement at issue."  Id.

The Sixth Circuit reversed and found that the UAW had standing to enforce the agreement to which it had been a party, even without any claims made by individual parties to that agreement.

591 F. App'x at 469–470.  The Sixth Circuit noted that the parties had contracted for the district court to retain jurisdiction to enforce the settlement agreement, which vested that court with "inherent authority to enforce its orders by granting injunctive relief."  Id.  The "settlement [did] not divest the UAW of standing to enforce the policy changes it achieved for its members when the Agency allegedly renege[d] on its promises."  Id. at 469.

The same result is proper here, where—like in Frazier—the UAW seeks to enforce a settlement agreement to which it was a party based on the grievances of new claimants.  Per the parties' decision to vest this Court with jurisdiction to enforce its terms, this Court has inherent authority to order compliance with the Zynda settlement agreement, and as a party to that agreement, the UAW has standing to invoke that authority.  See id.  Before the parties executed the settlement agreement at issue in the present case, the UIA successfully overcame Defendants' argument that it lacked standing in the Zynda litigation.  See 175 F. Supp. 3d at 804.  The UIA has not now been "divest[ed] . . . [of] standing to enforce the policy changes it achieved."  Frazier, 591 F. App'x at 469.  The Court rejects Defendants' argument that the UAW lacks standing to enforce the Zynda agreement.[16]

---

[16] Defendants attempt to distinguish Frazier as a case where the individuals who attempted to enforce the settlement agreement were UAW members, while in this case, none of the individual Plaintiffs self-identifies as a UAW member.  See Reply in Supp. Mot. to Dismiss at 5–6.  This distinction was not dispositive for either the district court or the Sixth Circuit in Frazier, though the Sixth Circuit did note that the UAW had associational standing based on injuries to its members.  See 591 F. App'x at 469.  Even if the UAW were required to assert injuries to its members under a theory of associational standing to enforce the Zynda settlement agreement, the UAW would not have to present plaintiffs who were UAW members here at the pleading stage.  The Zynda court rejected this very argument, finding that the UAW had standing to assert claims even though no individual plaintiffs were UAW members.  175 F. Supp. 3d at 804 ("UAW need not ensure that one of the individual Plaintiffs is also one if its injured members. . . .  At this stage, UAW is not required to find and produce members who fall within this class; it is enough that UAW alleges their existence."); see also Am. Compl. ¶ 22 ("Many UAW members experience periodic layoffs and unemployment and file claims for UI benefits in Michigan. . . .  The UAW

In sum, the Court grants Defendants' motion to dismiss in part and denies it in part. Plaintiffs' substantive due process claims are dismissed.  Plaintiffs may proceed on their procedural due process claims (i) against Dale in her official capacity, to the extent that Plaintiffs seek prospective injunctive relief; and (ii) against the individual Defendants in their personal capacities, to the extent Plaintiffs seek monetary damages.  Plaintiffs may also proceed on their claims to enforce the <u>Zynda</u> settlement agreement.[17]

### B.  Motion for Preliminary Injunction

The UAW moves for a preliminary injunction to halt the UIA's practices alleged in the complaint.  <u>See</u> Mot. for Prelim. Inj. at 1–3.  The UAW has clearly and consistently asserted throughout the briefing on both pending motions that it is <u>not</u> asserting associational standing based on injuries to its members; rather, it is asserting standing only as a party to the <u>Zynda</u>

---

seeks to protect the constitutional and statutory rights of its claimant members and to advance the rights it has secured for all UI claimants, including through the <u>Zynda</u> Settlement Agreement.").

[17] Defendants also argue that Plaintiffs have "failed to state a claim for violation of the Social Security Act."  Br. in Supp. Mot. to Dismiss at 6–7.  But Plaintiffs have not asserted any claim under the Social Security Act.  <u>See</u> Am. Compl.  Defendants similarly argue that the Court should reject any request for declaratory relief.  Br. in Supp. Mot. to Dismiss at 20–22.  But as Plaintiffs note, "a request for declaratory relief is not currently before this Court."  Br. in Resp. Mot. to Dismiss at 25.  The Court does not reach these additional points asserted by Defendants, which are not relevant to the claims pleaded by Plaintiffs.

settlement agreement.[18]  Accordingly, the Court construes the UAW's motion as one brought only

under that agreement.[19]

To prevail on its motion for a preliminary injunction, the UAW "must establish that [it] is

likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the

public interest."  Thompson v. DeWine, 976 F.3d 610, 615 (6th Cir. 2020) (punctuation modified).

Likelihood of success on the merits is "the most important part of this analysis."  Id. at 619.

Defendants argue in part that, for the UAW to enforce the terms of the settlement

agreement, it was "required to provide Defendant Agency with written notice of the alleged breach

and allow an opportunity to cure."  Br. in Supp. Resp. to Mot. Prelim. Inj. at 2 (citing Zynda

---

[18]  See Br. in Supp. Resp. Mot. to Dismiss at 23 ("Plaintiff UAW seeks to enforce the policy changes it achieved in the Zynda Settlement.  Plaintiff UAW is not seeking to protect individual claimants' rights—it is protecting its own right to be able to rely on the state to follow its agreements."); Reply in Supp. Mot. for Prelim. Inj. at 2 (asserting UAW "has standing to enforce a contract to which it is a party," that it "is not asserting standing on behalf of non-UAW parties or associational standing," and that it "asserts its own right to enforce the Zynda Settlement"); id. at 3 ("Zynda settled with a contract requiring the UIA to bring its policies into line with these basic due process rights," and "UAW has the right to seek injunctive relief as to actions that violate this contract.").

Defendants renew their argument that the UAW lacks standing to enforce the Zynda agreement. See Br. in Supp. Resp. Mot. for Prelim. in. at 10–11.  The Court finds that this argument lacks merit for the reasons discussed in the context of Defendants' motion to dismiss.

[19] To the extent that the UAW intends to assert procedural due process claims distinct from claims brought under the Zynda settlement agreement without relying on associational standing, the UAW has not—as an association—"suffered" an "actual injury" based on the alleged deprivation of individual claimants' rights, and so it has no standing to assert these claims.  Pike Cnty. Citizens United for Just. v. Oxy USA, Inc., 182 F.3d 918 (6th Cir. 1999) (per curiam) (finding that union had no standing to assert claims based on alleged injuries to members where it failed to establish associational standing).

Settlement Ag. at PageID.1651). The settlement agreement sets out a procedure by which the parties to the <u>Zynda</u> agreement must provide the UIA with "notice of breach," stating:

> If Plaintiffs believe any Agency policy, practices, or actions are not in compliance with this Settlement Agreement, Plaintiffs shall give the Agency written notice of such alleged breach providing the opportunity to cure such breach for a period of thirty (30) business days after delivery of the notice.

<u>Zynda</u> Settlement Ag. at PageID.1651. Defendants submit that none of the individual Plaintiffs sent a written notice of any alleged violation of the settlement agreement to the UIA before they commenced the present suit. Br. in Supp. Resp. to Mot. Prelim. Inj. at 17. The only such notice received by the UIA was sent by Wendy Renney, who is not a party to this action and who Defendants assert does not "appear" to be a UAW member. <u>Id.</u> (citing Renney Violation Notice (Dkt. 16-10)). The UAW does not acknowledge or respond to this argument at all. <u>See</u> Reply in Supp. Mot. Prelim. Inj.[20]

Without the benefit of the UAW's position, the Court accepts Defendants' view that the plain terms of the settlement agreement require the UAW to comply with agreed-upon procedures and provide UIA with notice and an opportunity to cure any breach before it asserts a violation of the <u>Zynda</u> agreement. <u>See</u> <u>Zynda</u> Settlement Ag. at PageID.1651. Therefore, on the record before it, the Court finds that the UAW is not likely to prevail on the success of its claims under the <u>Zynda</u> settlement agreement.

With the "most important part" of the preliminary injunction analysis weighing against the UAW, <u>Thompson</u>, 976 F.3d at 619, and without a likelihood of success, the UAW has not established that the factors collectively counsel in favor of this extraordinary relief. The UAW cannot insist that it suffers irreparable harm without having established a meritorious basis for

---

[20] Defendants also raised this argument at the hearing on the pending motions. Counsel for the UAW again declined to provide a response.

relief.  Further, to the extent that the UAW seeks to enjoin the UIA from seeking "recovery of an overpayment" prior to a final determination of eligibility under the <u>Zynda</u> agreement, <u>Zynda</u> Settlement Ag. at PageID.1649—which is Plaintiffs' strongest argument that the <u>Zynda</u> agreement applies to their present dispute on the plain language of its terms—there is already an injunction in place protecting Plaintiffs from these practices.  Defendants correctly note that the Michigan Court of Claims entered an injunction in <u>Saunders</u> halting such collection activity, which applies to the putative class members in this case.  Br. in Supp. Resp. to Mot. for Prelim. Inj. at 21–22 (citing <u>Saunders</u> August 11, 2022 Op. & Order at 17 (Dkt. 19-2) (finding that plaintiffs were "entitled to preliminary injunctive relief to prevent the Agency from engaging in collection efforts until after the administrative process ha[d] run its course")).  Thus, even if the UAW's contractual claim has merit, its members are already shielded from imminent, irreparable harm without any action by this Court.

Additionally, the balance of harms and the public interest weigh in favor of allowing a state agency to continue its operations unimpeded without a showing that it likely violated its contractual obligations.  <u>See</u> <u>Thompson</u>, 976 F.3d at 615.  The Court denies the UAW's motion for a preliminary injunction.

### III.  CONCLUSION

For the reasons explained above, the Court (i) grants in part and denies in part Defendants' motion to dismiss (Dkt. 19) and (ii) denies the UAW's motion for a preliminary injunction (Dkt. 16).

SO ORDERED.

Dated:  July 12, 2023                                    s/Mark A. Goldsmith
    Detroit, Michigan                           MARK A. GOLDSMITH
                                      United States District Judge